Doris ALSTON, Plaintiff–Appellee,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellant.

No. 856, Docket 89–6196.

United States Court of Appeals, Second Circuit.

Argued: March 2, 1990.

Decided: May 25, 1990.

Christopher G. Lehmann, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty. for E.D.N.Y., Robert L. Begleiter, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for defendant-appellant.

John M. Bigler, Rockville Center, N.Y. (Robert, Huber, Lerner & Bigler, Rockville Center, N.Y., on the brief), for plaintiff-appellee.

Before OAKES, Chief Judge, and KEARSE and WALKER, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Secretary of Health and Human Services (the "Secretary") appeals from a final judgment of the United States District Court for the Eastern District of New York, Leonard D. Wexler, *Judge,* reversing the Secretary's finding that plaintiff Doris Alston was not entitled to disability benefits under Title II of the Social Security Act, 42 U.S.C.A. § 401 *et seq.* (West 1983 & Supp.1990) (the "Act"). The district court held that although the Secretary's finding that Alston could perform "sedentary" work was supported by substantial evidence, it should be set aside on the ground that such a finding was precluded by the Secretary's finding that Alston could not perform her prior job. On appeal, the Secretary contends (1) that upon determining that the finding that Alston was able to perform sedentary work was supported by substantial evidence, the court should have upheld that finding, and (2) that there was no inconsistency in the Secretary's decision. We agree with both contentions, and we therefore reverse the decision of the district court.

## I. BACKGROUND

The facts with respect to Alston's claim of disability were developed in two administrative hearings. Each hearing resulted in a denial of benefits; each denial was vacated by the district court. The record reveals the following.

### A. *The First Administrative Decision*

From 1976 until early 1981, Alston worked as a balancing clerk for Merrill Lynch Relocation Management ("Merrill"). In December 1980, she began to experience a severe cough and shortness of breath. She sought treatment at the emergency room of Franklin General Hospital in January 1981 and was hospitalized there for two weeks. When she was discharged, she was told she could return to work.

In February 1981, she consulted Dr. Howard S. Friedman, Chief of Cardiology at The Brooklyn Hospital, who hospitalized her again and made a diagnosis of high blood pressure, pulmonary edema, and mitral regurgitation. Alston remained at Brooklyn Hospital for approximately two weeks. After being released, she began seeing Dr. Friedman on a regular basis, approximately every two to three months. His continuing diagnosis was hypertension and congestive cardiomyopathy, for which

he prescribed various medications. Alston did not return to work.

In March 1983, Alston filed an application for disability benefits under 42 U.S.C.A. § 423. In the Vocational Report filed as part of her application, Alston stated that her work at Merrill included "carring [*sic*] and lifting books 10–15 lbs for 40–65 ft. sometime [*sic*] all day or 3 to 4 day [*sic*]...." She stated that prior to working at Merrill she had worked as a coding clerk at Longines Wittnauer ("Longines"), where her responsibilities included "[c]arring [*sic*] and lifting books 10–15 lbs. 3–4 ft." Her application was denied initially and upon reconsideration. The denial after reconsideration concluded that, though Alston could not perform certain kinds of work,

> you are able to perform light work (for example, you could lift a maximum of 20 lbs., with frequent lifting or carrying of objects weighing up to 10 lbs., or walk or stand for much of the working day).

> Based on your description of your usual job as a balancing clerk, your condition does not prevent you from returning to this work.

Alston sought review of this ruling by an administrative law judge ("ALJ").

At a hearing before ALJ Lester Rosen, Alston testified with respect to, *inter alia,* the physical demands of her jobs at Merrill and Longines. She testified that at Longines her job responsibilities included "lifting file boxes" weighing "[a]bout twenty-five to thirty pounds." She testified that at Merrill, she had to lift and carry "[f]ile boxes, sometime [*sic*] ... the bounders [*sic*] for the computer printouts," which she estimated weighed "the same."

ALJ Rosen also heard testimony from Dr. John L.S. Holloman, Jr., a medical advisor for the Social Security Administration (the "Administration"), who had reviewed Alston's medical records. Dr. Holloman confirmed that the records documented Alston's heart problems and hypertension. He further testified that as far as he could determine, the hypertension was not controlled. In response to questions about Alston's ability to return to work, he stated

that he thought she remained able to sit, but that her lifting should be limited to "something less than 5 pounds."

Dr. Friedman had submitted his written reports on Alston's condition, answered questions orally by telephone, and provided electrocardiogram printouts. At the close of the hearing, ALJ Rosen asked Alston's attorney to obtain a "residual functional capacity report" from Dr. Friedman, evaluating her ability to work, including her ability to lift, carry, walk, and stand. When ALJ Rosen did not receive the report, he renewed his request. No such report was forthcoming.

In a decision dated September 13, 1984, ALJ Rosen denied Alston's claim for disability benefits. Citing this Court's decision in *Eiden v. Secretary of Health, Education & Welfare,* 616 F.2d 63 (2d Cir. 1980), he discounted Dr. Holloman's testimony and treated as binding the records and opinions of Dr. Friedman, Alston's treating physician. He found that

> as of February 10, 1983, claimant's conditions were well controlled with medication and that while unable to perform her past relevant work due to its lifting requirements, she at all times thereafter retained the capacity for the full range of sedentary work....

*Id.* at 5. As a result, the ALJ concluded that "[t]he claimant was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision...." *Id.* at 6.

After exhausting her administrative remedies, Alston commenced an action in the district court for review of the denial of benefits. The district court, in a Memorandum and Order dated January 24, 1986 ("1986 Order"), found the Secretary's decision flawed in several respects. The court found that ALJ Rosen had erred in ignoring Dr. Holloman's testimony and in relying solely on Dr. Friedman's records, rather than soliciting a residual functional capacity report. Thus the court concluded that the Secretary's decision was based on an incomplete record. Further, in light of the ALJ's finding that Alston was unable to perform her previous job, the court ex-

pressed skepticism at the finding that she remained able to perform "sedentary" work, stating that "[i]n this Court's opinion, plaintiff's former job virtually defines sedentary work." *Id.* at 7. The court concluded that the Secretary's decision was not supported by substantial evidence, and it remanded to the Secretary "with directions to determine whether plaintiff's illness has so limited her functional capacity as to make it impossible for her to perform sedentary work." *Id.*

## B. *The Second Administrative Decision*

On remand, the Secretary ordered a cardiovascular consultative examination and report, and sought a residual functional capacity report from Dr. Friedman. A new hearing was held in September 1986 before ALJ Milton Pravitz. Alston testified as to the history and continued existence of her medical problems, including periodic episodes of chest and arm pain, severe coughing, and fatigue. She stated that she would "get out of breath" when carrying two grocery bags each weighing five to six pounds. At this hearing, she testified that her job at Merrill had required her to lift and carry computer printouts weighing "about five pounds, or three or four" and to lift or carry file boxes "[a]bout once a year...."

The ALJ also heard testimony from Dr. Joseph F. Chiaramonte, a medical advisor to the Administration, who had reviewed Alston's medical history. He testified, based on his review of that history that Alston had congestive cardiomyopathy and hypertension, both of which were controlled by medication. Relying on her testimony at the hearing as to "her ability to carry packages of 12 pounds, [and] her fulltime [*sic*] employment, not necessitating carrying anymore [*sic*] than four pounds, being primarily sedentary employment," he opined that Alston "should go back to work."

Other evidence presented to the ALJ included the report of Dr. Jack Budow, who had conducted the ordered cardiovascular examination of Alston. Dr. Budow's report concluded that Alston had hypertensive heart disease that was controlled with medication, that she had had an episode of severe heart failure with pulmonary edema in 1981 but that condition too was controlled with medication, and that she might have had a myocardial infarction at some time in the past.

Despite repeated requests from ALJ Pravitz and Alston's attorney, Dr. Friedman still did not submit a residual functional capacity report. Dr. Budow, however, submitted such a report in which he concluded, *inter alia*, that Alston could lift up to 10 pounds, but could do so only occasionally (which the report defined as up to one-third of an eight hour day).

In a recommended decision dated January 30, 1987 ("Second ALJ Decision"), ALJ Pravitz concluded that Alston was not entitled to benefits. The ALJ classified Alston's former work as "light" according to the job classification scheme set forth in the Secretary's regulations, 20 C.F.R. § 404.1567 (1989), meaning that it required lifting up to 20 pounds at a time. Though finding that Alston could not perform her prior work, he found that Alston remained able to do "sedentary" work, a less strenuous category of work defined by those regulations. Accordingly, he found that Alston was not disabled within the meaning of the Act.

## C. *The District Court's 1989 Decision*

After an unsuccessful administrative appeal, Alston commenced the present action in the district court for review of the denial of benefits. Both sides moved for judgment on the pleadings, pursuant to Fed.R. Civ.P. 12(c).

In a Memorandum and Order dated June 13, 1989 ("1989 Order"), the district court found that at the second administrative hearing, unlike the first, the ALJ had been presented with "medical testimony indicating that plaintiff could perform sedentary work. In a purely *technical* sense, substantial evidence supports the Secretary's determination that plaintiff can perform sedentary work." *Id.* at 9 (emphasis in original). However, reiterating its earlier view that Alston's prior job " 'virtually de-

fines sedentary work,'" *id.* (quoting 1986 Order at 7), the court held that "the ALJ's conclusions in both hearings that plaintiff's impairment prevents her from performing her previous job but that she can perform sedentary work *is* [*sic*] *self-contradictory.*" *Id.* at 9–10 (emphasis in original). The court therefore reversed the Secretary's decision and entered judgment awarding benefits to Alston. This appeal followed.

## II. DISCUSSION

On this appeal, the Secretary contends that the district court erred (a) in ruling that the Secretary's finding that Alston was capable of performing sedentary work was impermissibly inconsistent with his finding that Alston could not return to her prior type of work, and (b) in refusing to uphold the Secretary's ruling once the court conceded that it was supported by substantial evidence. Alston opposes these contentions and argues in addition that we should uphold the judgment in her favor on the basis that the Secretary's sedentary-work finding was not supported by substantial evidence. We reject Alston's contentions and find merit in those of the Secretary.

### A. *Alston's Ability to Perform "Sedentary" Work*

■ As a general matter, when we review a decision denying benefits under the Act, we must regard the Secretary's factual determinations as conclusive unless they are unsupported by substantial evidence. *Aubeuf v. Schweiker,* 649 F.2d 107, 112 (2d Cir.1981); *see* 42 U.S.C.A. § 405(g); *Havas v. Bowen,* 804 F.2d 783, 785 (2d Cir.1986). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)). We have ruled that "'expert opinions of a treating physician as to the existence of a disability are binding on the fact finder unless contradicted by substantial evidence to the contrary.'" *Bluvband v. Heckler,* 730 F.2d 886, 892 (2d Cir.1984) (quoting *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978)); *see Hidalgo v. Bowen,* 822 F.2d 294, 296–97 (2d Cir.1987); *Schisler v. Heckler,* 787 F.2d 76, 85 (2d Cir. 1986). Further, when we review the record for substantial evidence, "we review the record as a whole. This means that in assessing whether the evidence supporting the Secretary's position is substantial, we will not look at that evidence in isolation but rather will view it in light of other evidence that detracts from it." *State of New York v. Secretary of Health and Human Services,* No. 89–6217, slip op. at 3548, 903 F.2d 122 (2d Cir. May 8, 1990). Where there is substantial evidence to support either position, the determination is one to be made by the factfinder. *See, e.g., Schisler v. Bowen,* 851 F.2d 43, 47 (2d Cir.1988).

■ The regulations promulgated under the Act establish a five-step process by which the Secretary is to evaluate an application for disability benefits. *See Bluvband v. Heckler,* 730 F.2d at 891; 20 C.F.R. § 404.1520 (1989). In essence, if the Secretary determines (1) that the claimant is not working, (2) that she has a "severe impairment," (3) that the impairment is not one that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in her prior type of work, the Secretary must find her disabled if (5) there is not another type of work the claimant can do. *See id.* §§ 404.-1520(b)-(f); 20 C.F.R. Part 404, Subpt. P, App. 1 (1989). In the present case, there is no dispute that the Secretary correctly proceeded through the five steps of the process. The controversy concerns the Secretary's determination, in the fifth step, that Alston remained capable of performing other work.

The assessment of a claimant's ability to perform other work is made by referring to charts set out in the Secretary's regulations at 20 C.F.R. Part 404, Subpt. P, App. 2 (1989). The charts take account of a claimant's age, education, job skills, and

residual functional capacity in determining whether the claimant is disabled from doing work in any of five categories of jobs: "very heavy," "heavy," "medium," "light," and "sedentary." The "sedentary" and "light" categories are defined as follows:

(a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567.

■ The district court correctly concluded that the Secretary's finding that Alston was capable of performing sedentary work, as defined in the regulations, was supported by substantial evidence. Dr. Friedman's records indicated that Alston's condition had not worsened appreciably since 1981 and that both her hypertension and her cardiomyopathy were being controlled with medication. Since these records did not directly address the question of whether Alston was disabled, their conclusions, though entitled to "some extra weight," *see Schisler v. Bowen,* 851 F.2d at 47, were not binding on the Secretary. The Secretary based his decision on the testimony of Dr. Chiaramonte, who had examined all of Alston's medical history, including Dr. Friedman's records, and the report of Dr. Budow, which included a residual functional capacity report prepared after he had examined Alston. Dr. Budow's report indicated plainly that Alston was capable of performing work that required only occasional walking, only occasional lifting, and no lifting of more than 10 pounds.

Though Alston testified that the pain and symptoms she experienced did not permit her to sit for long periods of time or to carry her groceries without becoming short of breath, ALJ Pravitz considered these "subjective complaints of pain and fatigability together with [Alston's] testimony, demeanor, appearance and the medical record," Second ALJ Decision at 7, and determined that her testimony did not credibly indicate that she could not perform even sedentary work. In his role as the finder of fact he was fully entitled to make such a determination, and Alston has presented no evidence to convince us that it was clearly erroneous.

Though Alston's position was also supported by the opinion of Dr. Holloman at the first hearing that Alston's ability to lift was limited to approximately five pounds, the ALJ was not compelled to credit that testimony over the testimony of Drs. Chiaramonte and Budow and the records of Dr. Friedman. All of the latter evidence pointed toward a conclusion that Alston could do "sedentary" work as that term is defined in the Secretary's regulations. We agree with the conclusion of the district court that the evidence that Alston could perform sedentary work as thus defined, even when viewed in the light of Alston's own testimony and that of Dr. Holloman, was substantial.

B. *The Perceived "Inconsistency" in the Secretary's Ruling*

■ We do not agree with the district court's conclusion, however, that the court was entitled to refuse to uphold the Secretary's finding on the basis of its view that the Secretary's determinations were mutu-

ally inconsistent. In reaching the conclusion that the Secretary's finding that Alston could not perform her prior work contradicted the finding that she could perform "sedentary" work, the district court appears to have disregarded the fact that the terms "light" and "sedentary" have technical definitions in the regulations. Though Alston's previous job as a balancing clerk, which required her to sit at a desk most of the day, might be viewed as sedentary in lay terms, the classifications established by the Secretary supersede less structured lay conceptions.

Further, there was substantial evidence that it was more appropriate to classify Alston's work at Merrill as "light" rather than "sedentary" within the framework established by the Secretary. The job plainly entailed not only sitting but also some lifting and carrying of boxes and computer printouts. Though Alston's ultimate estimate as to the level of weight she was required to carry (three-five pounds) would have fit that work into the sedentary category, the ALJ was not required to accept that testimony as credible, especially in light of (a) the fluctuations of Alston's weight estimates during the administrative proceedings and (b) the administrative rulings that immediately preceded the changes in her estimates. For example, in her application for benefits, Alston stated that she frequently had to lift weights of 10–15 pounds; the Administration's ruling denying benefits stated that Alston was capable of lifting up to 20 pounds and hence was able to return to her prior "light" work. At the hearing that ensued, Alston for the first time mentioned higher weights, stating that she sometimes had to lift boxes weighing 25–30 pounds. Immediately after Alston made that estimate at the first hearing, ALJ Rosen stated that the job at Merrill might have been classified as light, and not sedentary, "only because of the lifting." ALJ Rosen's written decision confirmed that the "light" classification given to Alston's prior work was "due to its lifting requirements." It was only at the second hearing, following these rulings and the finding that Alston was not capable of returning to her work at Merrill,

that Alston testified that her work at Merrill entailed lifting of only three-five pounds. This last estimate, though pointing toward a sedentary classification for that work, was far lower than the estimates Alston had given at the first hearing and in her application. ALJ Pravitz was entitled to assess this final revision against the background of the prior administrative rulings and to conclude that Alston's first estimate was the most accurate.

In sum, based on the credible evidence as to the requirements of Alston's previous job, there was no inconsistency between the finding that her prior work, which she could no longer perform, was "light", and the finding that she could still perform "sedentary" work. As a result, since the conclusion that Alston was not disabled was supported by substantial evidence, the Secretary's decision should have been affirmed.

## CONCLUSION

For the foregoing reasons, the decision of the district court is reversed and the case is remanded with instructions to enter judgment affirming the Secretary's denial of benefits.