**Mary V. PATTERSON, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security,[1] Defendant.**

No. 94 Civ. 9223(JES).

United States District Court, S.D. New York.

Sept. 24, 1997.

---

1. Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L.

James M. Baker, Bronx Legal Services, Bronx, NY, for Plaintiff,

Mary Jo White, U.S. Atty. for the Southern District of New York, New York City (Susan D. Baird, Asst. U.S. Atty., of counsel), for Defendant.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Mary V. Patterson brings the instant action challenging a decision of defendant Commissioner of Social Security (the "Commissioner") denying her application for Social Security disability benefits under Title II of the Social Security Act. Pursuant to Federal Rule of Civil Procedure 12(c), Patterson and the Commissioner cross-move for judgment on the pleadings. For the reasons set forth below, Patterson's motion is granted and the Commissioner's final decision denying Patterson disability benefits is reversed.

## BACKGROUND

Plaintiff Mary V. Patterson was born on March 24, 1941, and currently lives in an apartment in the Bronx with custody of her ten year old granddaughter. *See* Transcript

No. 103–296, the functions of the Secretary of Health and Human Services in Social Security cases were transferred to the Commissioner of Social Security effective March 31, 1995. In accordance with section 106(d) of Pub.L. 103–

296, the Court deems the complaint amended to substitute Shirley S. Chater, Commissioner of Social Security, for Donna E. Shalala, Secretary of Health and Human Services, as defendant.

of Administrative Record ("Tr.") at 35, 58, 60. In 1966, Patterson was married, but lived with her husband for only three weeks. Tr. at 60. Since that time, she has been by herself and considers herself single. Tr. at 35. Patterson graduated from Freeman High School in Lenoir, North Carolina, in 1959. Tr. at 102. With the exception of a three day, nine hour computer course, she has not had any college or vocational training. Tr. at 36, 102.

From 1974 to 1980, Patterson was employed as a secretary for the Hertz Corporation in Manhattan. Tr. at 37, 102. From late 1980 until mid–1992, Patterson held a similar secretarial position with Memorial Sloan Kettering, where she was terminated from her job because of her poor vision and inability to work effectively in front of a computer screen. Tr. at 36, 37, 49, 102. Shortly thereafter, Patterson found work as a secretary for Thomas William Partners, a law firm in Manhattan, which lasted for only eight days because of Patterson's continued difficulties with eye strain from the computer screen and headaches. Tr. at 54.

In November 1992, Patterson received a general physical examination from Dr. Peter Graham, who noted decreased visual acuity on Patterson's left side, and a history of asthma and arthritis pain. Tr. at 115, 117. Dr. Graham observed that Patterson had full range of motion, and opined that Patterson could perform work that included sitting, bending, lifting, carrying, hearing and speaking. Tr. at 115, 117–18.

That same month Patterson was examined by Dr. Nirenberg, a consulting ophthalmologist. Tr. at 122. Dr. Nirenberg noted that Patterson had a history of high blood pressure, a heart murmur, asthma and arthritis. Tr. at 122. He further noted that Patterson complained of pressure pain in her left eye, headaches on her left side, and decreased vision in the left eye since childhood. Id. Dr. Nirenberg found Patterson's visual acuity to be 20/25 corrected in the right eye but that she was essentially blind in the left eye with a lens trace nuclear sclerotic cataract, slight exotropia, and a choroidal scar due to "old toxoplasmosis." Tr. at 122–23. Dr. Nirenberg advised Patterson to see an Ear, Nose & Throat doctor and have sinus workup, and also prescribed new glasses. Id. He further noted that Patterson had no difficulty navigating in the patient lounge. Id.

On March 30, 1993, Patterson underwent a second physical examination which had been arranged by the Commissioner. The examining physician, Dr. Myron Seidman, found osteoarthritis in Patterson's knees and shoulders, and recorded her virtual blindness in the left eye along with her complaints of throbbing headaches behind the left eye and forehead. Tr. 130–32. He noted the history of asthma but found Patterson to be asymptomatic on the day of the exam and all other pulmonary functions were normal. Tr. 132, 149–50. Dr. Seidman concluded based on the objective findings of his examination, that he would limit Patterson to "light to moderate lifting and carrying with limitation from extensive standing, walking, pushing, pulling leg controls." Tr. at 132. He further concluded that Patterson had slight limitation sitting, no limitation handling objects, and "has eye problems." Id.[2]

On October 9, 1992, Patterson filed an application for disability insurance benefits, alleging disability as of May 29, 1992, her last day of work at Sloan Kettering. Tr. at 58, 102. Her claim was denied initially and after reconsideration. Tr. at 62, 76. Patterson then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 25, 1994. Tr. at 32–57. At the hearing, the ALJ received into evidence the

---

2. In addition, the Administrative Record contains two disability evaluation forms completed by physicians who treated Patterson for eye problems at North Central Bronx Hospital two to three times per year since 1990. Tr. at 124–27, 155–57. Dr. Rosen's March 31, 1993 evaluation form recorded blindness in Patterson's left eye due to toxoplasmosis. Tr. at 124–127. Dr. Mathiessen's July 14, 1993 form noted that Patterson's corrected vision in the right eye is 20/20 which should remain stable. Tr. at 156. He further reported that Patterson's right eye tears intermittently and was diagnosed as myopic and presbyopic. Id. However, he wrote that Patterson is essentially blind in the left eye with 20/1000 vision and will remain so. Id. He further noted that monocular patients can have eye strain problems after reading for extended periods. Id.

above mentioned medical reports concerning Patterson's physical condition and testimony from Patterson who was represented by counsel.

Patterson testified that her work at Sloan Kettering consisted of typing, filing, answering the telephones and acting as a receptionist. Tr. at 36. Moreover, when asked by the ALJ whether she was a secretary or an office clerk, Patterson testified that she was a secretary. *Id.* After working eleven years at Sloan Kettering, Patterson further stated that her employer told her that she would have to learn to use a computer, and sent her to a computer class. Tr. at 49. Because Patterson's eyes teared repeatedly and she suffered headaches behind her eyes, she was unable to keep up with the pace of the class, and did not complete the course. Tr. at 49–50. Furthermore, Patterson stated that she began to receive poor evaluations at work and made mistakes in her typing due to her poor vision. Tr. at 50.

Patterson testified that her afflictions have never required hospitalization. Tr. at 37. However, she stated that she did go to the emergency room six or seven times between May 1992, and April 1994, because of shoulder pain and situations where she could not see anything other than black spots. *Id.* Patterson further stated that she has visited doctors about eight times over this same two year period for her eyes and asthma, that they have given her oxygen for her severe asthma flare ups which occur about twice a week, and that if she could not make it to the emergency room, she would drink water and sit up with a pillow behind her back. *Id.* Patterson estimated that she can remain seated for one hour and a half, can remain standing for an hour at a time, can walk a maximum of eight blocks, that bending is a problem because of her sore knees and shoulders, and estimated that she can lift twenty-five pounds or the contents of her shopping cart. Tr. at 42. However, when examined

by her attorney, Patterson testified that she would not be able to repeatedly lift certain large file folders at Sloan Kettering, which weigh approximately eight pounds each. Tr. at 48. Patterson stated that she performs a full range of household chores, does volunteer work two days a week by serving coffee and reading the newspaper to nursing home residents, and has looked for work since May 1992, but has been repeatedly turned down because of her poor vision. Tr. at 43–44.

On May 25, 1994, the ALJ rendered an unfavorable decision to Patterson finding her not to be under a disability as defined in the Social Security Act, at any time through the date of his decision. Tr. at 20. Specifically, the ALJ stated that "the claimant cannot return to her last job, because of the use of a computer requirement, which she is unable to fulfill, but claimant can still do general clerical work where the use of a computer would not be necessary." Tr. at 19. On June 15, 1994, Patterson filed for a review of the ALJ's unfavorable decision. . Tr. at 10. Patterson provided the Appeals Council with an additional medical evaluation;[3] however, her appeal was denied on October 28, 1994. Tr. at 3, 10.

On October 17, 1994, Patterson filed the instant action alleging that she became disabled and unable to perform any work due to impaired vision, headaches, asthma and arthritic pain as of May 29, 1992, and that the ALJ's decision denying social security disability benefits was not supported by substantial evidence and was contrary to law and regulation. Pursuant to Federal Rule of Civil Procedure 12(c), the parties cross-move for judgment on the pleadings.

## DISCUSSION

■ The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C.

---

**3.** On April 28, 1994, a doctor for the State Office of Vocational Rehabilitation examined Patterson at the Montefiore Hospital Eye Clinic and found her to have 20/25 corrected vision in her right eye but a 98% deficiency in her left eye. Tr. at 175. He diagnosed her as having "mild blepharitis" (caused by blocked pores around the eye lashes) in the right eye which, in turn, caused the

tearing. Tr. at 176. The recommended treatment was warm soaks and the doctor prescribed artificial tears and eye drops for Patterson. Tr. at 176, 179. The doctor further advised Patterson to avoid working conditions where there is a risk of flying particles or foreign materials harming her because of her poor depth perception in her left eye. Tr. at 176.

§ 405(g) (1991); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982); *see also Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir.1980). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427, *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). If a court finds that there is substantial evidence supporting the Commissioner's decision, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. *See Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir.1990).

■ In order to be found disabled, a claimant must be unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d)(1) (1991); 20 C.F.R. § 404.1527 (1996). The Second Circuit has summarized the Commissioner's five-step sequential evaluation process for evaluating disability claims as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is un-

able to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982); *see also* 20 C.F.R. § 404.1520. The claimant bears the burden of proof as to the first four steps. If the claimant establishes that he or she is unable to perform his or her past relevant work, the Commissioner bears the burden as to determining the claimant's ability to perform other work available in the national economy. *See Berry*, 675 F.2d at 467.

■ In this case, the Court is unable to determine whether the ALJ's decision denying benefits is supported by substantial evidence since his findings are ambiguous.[4] First, the ALJ found that Patterson is unable to use a computer due to her visual impairment. That finding is overwhelmingly supported by substantial evidence. In addition to her own testimony and the fact that she was terminated from her employment because she could not learn to use the computer, the objective medical evidence shows that Patterson is virtually blind in one eye, which can lead to eye strain, and has mild blepharitis, which causes tearing.

At the same time, the ALJ also found that Patterson can return to her past relevant work as a clerk. Patterson testified, however, that she performed secretarial, not clerical work in the past, and that she was terminated from her job because of her inability to use the computer, which the ALJ found credible. That being so, the Court cannot determine whether the ALJ found under step IV that Patterson's past relevant work was clerical, and that clerical jobs exist which do not require the use of a computer; whether he found under step IV that Patterson's past relevant work was secretarial, and that sec-

---

4. Patterson directly challenges the ALJ's findings with respect to whether her *vision* impaired her ability to work, and has not pressed her other claims that her asthma, arthritis, and high blood pressure impose limits on her ability to sit, stand, and walk.

retarial jobs exist which do not require the use of a computer; or whether he found under step V that her past relevant work was secretarial, but that clerical jobs exist in the national economy which do not require the use of a computer. These distinctions are critical because they affect which party bears the burden of proof with respect to that issue.

There is absolutely no evidence in the record whether, at the time of Patterson's application for benefits, there existed *either* secretarial or clerical jobs which did not require the use of a computer. At Oral Argument, the Commissioner argued that the Court could take judicial notice under *Jock v. Harris,* 651 F.2d 133, 135 (2d Cir.1981), that such jobs exist. However, if anything, *Jock* cuts against the Commissioner. In *Jock,* the Second Circuit held that it is a claimant's burden to show an inability to return to her "previous work" as a cashier, not simply to her former job as a "supermarket cashier." *Jock,* at 134. Moreover, the Court stated that it was proper for the ALJ to take administrative notice that the occupation of "cashier" encompasses sedentary jobs as well as jobs that may require extended periods of standing or occasional supplemental work requiring greater amounts of exertion. *Id.*

Here, it is entirely less clear whether secretarial or clerical jobs existed in the early 1990's which did not require the use of a computer. In today's computer age, five-year old children are becoming computer literate and computer use pervades almost every aspect of our lives. In addition, the fact that Patterson was terminated because her job now required the use of a computer further evidences the changing job market. While the Court is aware that non-computer secretarial and clerical jobs may exist, such an assertion in today's computer age must be supported by proof through evidence, and may not be established by judicial or administrative notice.

■ Therefore, the only question left for the Court to resolve is whether the case should be remanded to the Commissioner for further factual findings on that issue, or whether the ALJ's decision should be reversed and benefits be granted outright.

Because the Commissioner failed to respond to the issue of remand in its brief, which was addressed by Patterson in her brief, and because the Commissioner indicated at Oral Argument that she desired affirmance only, the Court deems the Commissioner to have waived her right to a remand. In any event, the Commissioner has failed to demonstrate good cause under *Carroll v. Secretary,* 705 F.2d 638, 643–44 (2d Cir.1983), for not incorporating evidence of secretarial or clerical jobs which do not require the use of a computer into the record, or making the appropriate and specific factual findings necessary for a step V denial of benefits if that was what was intended by the ALJ. In conclusion, the Court finds that the Commissioner made a strategic choice not to pursue that evidence.

That being so, the Court must reverse in view of the lack of substantial evidence here with respect to that issue. *See Rivera v. Sullivan,* 771 F.Supp. 1339, 1358–59 (S.D.N.Y.1991) (payment of benefits can be ordered "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose."); *see also DeJesus v. Chater,* 899 F.Supp. 1171, 1179 (S.D.N.Y.1995). This is especially true since the overwhelming evidence in the record demonstrates that Patterson is an individual who has worked and supported herself her entire life, and continues to volunteer her time for charitable purposes. She is not the type of claimant who appears to be feigning disability. It is thus fair to assume that were Patterson able to secure a job which she could perform, she would do so, and that it is therefore appropriate to award benefits in this case. *See Rivera v. Schweiker,* 717 F.2d 719, 725 (2d Cir.1983) (courts must give any claimant with good work history "substantial credibility" when claiming that they are no longer able to work due to a disability).

## CONCLUSION

For the reasons set forth above, Patterson's motion for judgment on the pleadings is granted, the Commissioner's motion for judgment on the pleadings is denied and the Commissioner's decision to deny Patterson

disability benefits, which was not supported by substantial evidence, is reversed. The Clerk of Court is directed to enter judgment accordingly and to close the above-captioned action.

It is **SO ORDERED.**