Richard CLEVELAND, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. 99 Civ. 3108(SAS).

United States District Court,
S.D. New York.

May 25, 2000.

Peter S. Tipograph, Sher, Herman, Bellone and Tipograph, P.C., New York City, for Plaintiff.

Lorraine S. Novinski, Assistant United States Attorney, New York City, for Defendant.

## *OPINION AND ORDER*

SCHEINDLIN, District Judge.

Plaintiff, Richard Cleveland, brings this action under Section 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), to review a final determination of the Commissioner of Social Security (the "Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") benefits based upon disability. For the reasons set forth below, the decision of the Commissioner is reversed and the case is remanded to the Administrative Law Judge for further proceedings consistent with this Opinion.

## I. Procedural History

 Plaintiff filed applications for SSI benefits and for disability insurance benefits on March 15, 1996 due to back pain and hypertension. *Tr.*[1] at 2. His claims were denied initially, *Tr.* at 58, and upon reconsideration, *Tr.* at 71. He then requested a hearing to review his claims, *Tr.* at 82, which was held on March 6, 1997 before Administrative Law Judge ("ALJ") James B. Reap. *Tr.* at 29. Attorney Robert Bellone represented plaintiff at this hearing. *Id.* The ALJ considered plaintiff's case de novo and, on May 1, 1997, found that plaintiff was not disabled and not eligible for SSI or disability insurance benefits.[2] *Tr.* at 24–25. This decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on February 25, 1999. *Tr.* at 4–6.

Plaintiff's complaint, seeking review of the Commissioner's decision, was filed on April 29, 1999. The Commissioner now moves for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), seeking affirmance of his decision. Plaintiff has cross-moved for reversal of the Commissioner's decision and payment of benefits as requested in his application.

## II. Plaintiff's Personal History

Plaintiff is a 54–year–old man who lives alone in a fourth-floor apartment in an elevator-equipped building. *Tr.* at 33. At the hearing before the ALJ, plaintiff testified that he injured his back in an on-the-

---

**1.** "Tr." refers to the transcript of the administrative record filed by the Commissioner as part of his answer in accordance with Section 205(g) of the Act, 42 U.S.C. § 405(g).

**2.** Disability insurance benefits are only available to individuals who become disabled at a time when they are fully insured. 20 C.F.R. § 404.131(a). The ALJ determined that plaintiff last met the insured status requirement on

December 31, 1994 and that he did not allege disability until March 15, 1996, the amended onset date, *see supra* note 4. *Tr.* at 20. The ALJ found that because plaintiff was not insured at the onset of his disability, he was precluded from finding that plaintiff was eligible for disability insurance benefits. *Id.* Plaintiff does not challenge this decision.

job accident on February 2, 1987.[3] Plaintiff, who has completed high school and two and a half years of college, alleges that he has been unable to work since December 18, 1989 because of a back disability.[4] *Tr.* at 84. In describing his back pain, plaintiff stated that it felt like "molten lead . . . and make a dagger out of it, and stick it in you." *Tr.* at 40. Plaintiff reported that he has periods of weeks or "a couple of months" where his back does not cause him pain but that he will also have periods of a "week or two" where his back prevents him from doing "what a normal person does." *Tr.* at 30–31. He also stated that the pain is sometimes constant. *Tr.* at 41.

Plaintiff testified that he cooks, does light cleaning, takes out his trash and does his laundry. *Tr.* at 44–45. He also stated that he does his own shopping, but that he cannot lift objects weighing more than 20 pounds for fear of dropping them. *Tr.* at 49–50. Plaintiff is able to take walks, drive an automobile, and ride public buses, but if he walks too much his back starts to bother him. *Tr.* at 44–46. His most comfortable position is sitting in a straight-backed chair. *Tr.* at 51. Doctors have prescribed Motrin and Flexeril for pain and plaintiff "periodically" attends physical therapy. *Tr.* at 41. Plaintiff stated that his pain is something he has learned to live with and that when his back is causing him pain he usually "just lays at home." *Tr.* at 43.

### III. Summary of the Medical Evidence

#### A. Treating Physician's Findings

Plaintiff was treated periodically by Dr. Robert D. Small from 1985 to 1997. *Tr.* at 101–11. He was initially treated for a left shoulder injury in May of 1985, *Tr.* at 112, but suffered a left hamstring injury in February of 1987. *Tr.* at 109. From May 14, 1987 to February 18, 1988, plaintiff sought treatment for pain and numbness in his left leg, back pain, and occasional pain and numbness in his left hand. *Tr.* at 105–08. Dr. Small ordered a magnetic resonance imaging test ("MRI") and an electromyograph ("EMG") of plaintiff's lumbosacral spine on May 14, 1987. *Tr.* at 108, 214. During appointments in August and September of 1987, plaintiff continued to report severe pain in his left leg, but stated that he had some relief of his back pain. *Tr.* at 106–07. On December 22, 1987, the results of the MRI and the EMG came back "normal." *Tr.* at 106. Plaintiff, however, reported continued back pain, severe at times, and numbness in his leg. *Id.* Dr. Small informed him that there was no further treatment available. *Id.* Plaintiff made another appointment to see Dr. Small on February 18, 1988. *Tr.* at 105. He reported mild back pain radiating down his left leg and occasionally his right leg. *Id.* Dr. Small informed plaintiff that since his symptoms were subjective and that no physiological cause of his pain could be demonstrated, there was nothing he could do. *Id.* He advised plaintiff to seek help from a neurologist or an alternative physician. *Id.* Dr. Small concluded that plaintiff was partially disabled due to subjective feelings of pain. *Tr.* at 104.

On August 3, 1990, plaintiff returned to Dr. Small reporting back pain but no further leg pain. *Tr.* at 103. He claimed that he could not sit for long periods of time and had to get up every fifteen to twenty minutes. *Id.* Dr. Small determined that plaintiff had a lumbosacral sprain of undetermined etiology and told him again that there was nothing further he could do. *Tr.* at 103. Plaintiff returned on November

---

**3.** He was employed as a fire fighter at the time of the accident. *Tr.* at 20.

**4.** Plaintiff's application for benefits stated that he became disabled on December 18, 1989. *Tr.* at 84. This date, however, is the date he was terminated from his job as a fire fighter, not the date of his injury. *Tr.* at 30. Plaintiff testified that he was unable to work to his "full capacity" from the date of the accident, February 2, 1987, until the date he was terminated. *Id.* No application for benefits was filed until March 1996 due to two periods of incarceration. *Tr.* at 30.

12, 1991 and told Dr. Small that he was there because his attorney needed an updated report. *Id.* On January 27, 1992, plaintiff returned to Dr. Small complaining of increased back and leg pain. *Tr.* at 102. Dr. Small ordered a second MRI on February 3, 1992. *Id.* The MRI revealed a degenerative disc disease but no evidence of mass effect on the nerve roots and no evidence of spinal stenosis or large, extruded disc material. *Tr.* at 214. Dr. Small reviewed the results of the MRI and determined that there was no herniated disk and no physiological cause for plaintiff's reported pain. *Tr.* at 101.

Plaintiff returned to Dr. Small approximately four years later on March 26, 1996, on referral from his attorney because he was applying for SSI benefits. *Tr.* at 175. He reported constant lower back pain radiating from the left buttock. *Id.* Dr. Small determined that plaintiff was asymptomatic after performing a physical examination. *Id.* On July 22, 1996, plaintiff sought treatment from Dr. Small for pain and stiffness in his left leg and back radiating down both thighs. *Tr.* at 175. Dr. Small found that plaintiff's straight leg raising was positive at 80 degrees and that there was some paravertebral muscle spasm, but that the deep tendon reflexes remained intact. *Id.*

Plaintiff's final appointment with Dr. Small was on February 24, 1997. *Tr.* at 173. Plaintiff made the appointment so that Dr. Small would complete the paperwork for his disability claim. *Id.* Dr. Small examined plaintiff and found that he was able to sit and stand but had tenderness over the left sciatic notch. *Id.* Dr. Small concluded, in a nine-line statement, that plaintiff is "disabled" with "consistent left sciatic pain" but that the etiology of the pain could not be identified. *Id.* Dr. Small determined that plaintiff should return to him on a "prn basis." *Id.* Dr. Small also completed a Workers' Compensation form indicating that plaintiff is "totally disabled" and that it is undetermined whether the disability will be permanent.

*Tr.* at 174. Dr. Small did not complete a form assessing plaintiff's ability to perform work-related activities. *Tr.* at 181–86.

**B. Hospital Findings**

Plaintiff was treated at Yonkers General Hospital from 1992 to 1996 for various ailments including oral thrush, headaches and vomiting, an allergic reaction to nuts, lightheadedness, and genital warts. *Tr.* at 113–39. Plaintiff's medical history includes occasional references to back pain, treated through exercise, *Tr.* at 127, and high blood pressure, treated with medication. *Tr.* at 113–39.

Plaintiff also received treatment at Yonkers Community Health Center from 1990 to 1997, usually for Department of Social Services assessments. *Tr.* at 161–72. While the physicians' notes are generally illegible, they do contain references to back pain and hypertension. *Id.*

**C. Consulting Physician's Findings**

On April 29, 1996, Dr. Joseph A. Grossman conducted a consultative examination. *Tr.* at 139–42. Dr. Grossman noted that plaintiff's gait and station were normal and that he had no difficulty undressing or getting on or off the examination table. *Tr.* at 140. Examination of plaintiff's spine revealed no impairments, but straight leg raising was positive on the left at sixty degrees. *Id.* Dr. Grossman found that plaintiff's joints had full range of motion and that his muscle strength was adequate with no wasting. *Tr.* at 141. Plaintiff was able to make a full fist without difficulty and stand on his toes normally and perform a full squat. *Id.* Dr. Grossman determined that plaintiff may be mildly impaired for prolonged repeated vigorous bending, stooping and crouching. *Id.* He also found that plaintiff had no impairment for standing, sitting, climbing, walking, lifting, carrying, hand and foot controls, pushing, pulling, vision, hearing, speech and travel. *Id.*

## D. Assessment of the Physicians' Reports

In summary, Dr. Grossman, the consulting physician, concluded that plaintiff was not disabled. Dr. Small, the treating physician, concluded plaintiff was disabled but did not address plaintiff's ability to do work-related activities. The ALJ found that Dr. Small's opinion that plaintiff was "disabled" was not supported by clinical findings or diagnostic studies. *Tr.* at 23. Furthermore, the ALJ discounted Dr. Small's findings because plaintiff only saw him "occasionally" and his actual treatment had been limited. *Id.*

## IV. Discussion

### A. Standard of Review

■ In reviewing a denial of disability benefits, a district court may reverse a finding of the Commissioner only if that finding is not supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g) ("the findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive."); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999). Within this context, the term "substantial evidence" has been defined as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

■ Accordingly, the Court's task is limited to determining whether the ALJ's decision is based on correct legal principles and supported by substantial evidence in the record. *See, e.g., Rosa*, 168 F.3d at 77; *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir.1998). This Court may not substitute its own judgment for that of the ALJ, even if it might have reached a different result upon a de novo review. *See, e.g., Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir.1991) (quoting *Valente v. Secretary of Health &*

*Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir.1990).

■ In deciding disability claims, there is a five-step process that must be followed. *See* 20 C.F.R. § 404.1520; *Rosa*, 168 F.3d at 77. *First*, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *Second*, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" which significantly limits his ability to work. *Third*, if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission. If it does, no further inquiry is made as to age, education, or experience, and the claimant is presumed to be disabled. *Fourth*, if the claimant does not have a listed impairment, the Commissioner must determine whether, despite the impairment, the claimant has the residual functional capacity to perform his past work. *Finally*, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which claimant could perform. *See, e.g., Rosa*, 168 F.3d at 77; *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982) (per curiam).

Here, the ALJ first determined that plaintiff had not engaged in any substantial gainful activity since December 18, 1989, the date plaintiff claimed he became unable to work due to back pain and hypertension. *Tr.* at 21. Second, the ALJ determined that plaintiff's impairments, consisting of a degenerative disc disease of the lumbosacral spine and hypertension, were not severe. *Id.* The ALJ then concluded that plaintiff did not have an impairment or combination of impairments that rose to the level of severity set out in the list of impairments. *See* 20 C.F.R., Part 404, Subpt. P, App. 1; *Tr.* at 22. In the fourth step of the evaluation, the ALJ did not credit plaintiff's testimony regard-

ing the severity of his pain and functional limitations, and held that plaintiff's symptoms "were not of such intensity, frequency or duration as to preclude all work activity." *Tr.* at 23. Although the ALJ found that plaintiff was unable to perform his past work as a fire fighter, he determined that he had the residual capacity to perform medium work.[5] *Id.* In the fifth step, the ALJ determined that there are positions in the national economy that fit plaintiff's qualifications. *Id.* at 24–25. Therefore, plaintiff was found not to be disabled. *Id.*

### B. The Treating Physician Rule

■ The Social Security regulations give special evidentiary weight to the opinion of a treating physician when diagnosing the nature and severity of a plaintiff's condition. *See Clark v. Commissioner of Soc. Sec.,* 143 F.3d 115, 118 (2d Cir.1998). The regulations state that a treating physician's opinion will be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques not inconsistent with other substantial evidence...." 20 C.F.R. § 404.1527(d)(2). In this case, the diagnosis of the treating physician, Dr. Small, indicates a disabling impairment but this diagnosis is not supported by objective medical evidence. Dr. Small finds plaintiff to be disabled but does not assess plaintiff's ability to work. He simply makes a conclusory finding that plaintiff is "disabled" without supporting this finding with objective medical evidence.[6] *Tr.* at 173.

### C. Development of the Record

■ When the opinion submitted by a treating physician is not adequately sup-

ported by clinical findings, the ALJ must attempt, *sua sponte,* to develop the record further by contacting the treating physician to determine whether the required information is available. *See* 20 C.F.R. § 404.1512(e); *see also Schaal v. Apfel,* 134 F.3d 496, 505 (2d Cir.1998) ("[e]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte.*" (citing *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996))); *Cruz v. Sullivan,* 912 F.2d 8, 9 (2d Cir.1990) (the ALJ is obligated to further develop the record where the treating physician submitted a statement of only a few lines concluding that plaintiff is unable to work); *Hankerson v. Harris,* 636 F.2d 893, 894 (2d Cir. 1980) (same as to a six-line statement of disability). The ALJ's affirmative obligation to develop the record exists even when the claimant is represented by counsel. *See Perez,* 77 F.3d at 47; *Rosa,* 168 F.3d at 79. Here, the ALJ made no attempt to develop the record. Rather, the ALJ discounted Dr. Small's findings and relied on the consulting physician's assessment that plaintiff was able to work. *Tr.* at 23. The ALJ was obligated to make further inquiry of the treating physician. Before he can make a final determination as to plaintiff's disability, the ALJ must obtain a more complete report from the plaintiff's treating physician. Upon remand, the ALJ is directed to obtain a more complete report from Dr. Small. Specifically, the ALJ must determine whether Dr. Small's opinion is supported by any clinical or laboratory diagnostic evidence. The ALJ should also ascertain what effect, if any, plaintiff's impairments have on his ability to perform any or all work-related activities.

5. Medium work involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds and standing for approximately six hours out of an eight-hour work day. *See* 20 C.F.R. §§ 404.1567(c) and 416.967(c).

6. Dr. Small states that "we have not been able to find the etiology of [plaintiff's back pain]." *Tr.* at 173. He does not, however, offer any analysis in support of his conclusion that plaintiff is disabled or state whether plaintiff's alleged disability will cause him any limitations with regard to work-related activities.

The Commissioner's motion for judgment on the pleadings is therefore denied, his decision denying SSI benefits is reversed, and the case is remanded so that the ALJ can further develop the record regarding the treating physician's report. This remand is pursuant to sentence four of 42 U.S.C. § 405(g). *See Nivar v. Apfel,* 98 Civ. 3390, 1999 WL 163397,\*5 (S.D.N.Y. Mar. 23, 1999); *Gracia v. Apfel,* 97 Civ. 4035, 1998 WL 599714,\*7 (S.D.N.Y. Sept. 10, 1998). The Clerk of the Court is directed to close this case.