Charles **BENNETT**, Plaintiff,

v.

**SECRETARY OF the UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,** Defendant.

No. CV 89-3260.

United States District Court, E.D. New York.

Aug. 1, 1991.

Lava & Levine, Hauppauge, N.Y., for plaintiff.

Andrew J. Malone, U.S. Atty. by Daniel DeVita, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Charles Bennett ("plaintiff") brings this action pursuant to § 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), for review of a final decision of the Secretary of the United States Department of Health and Human Services ("Secretary"), denying plaintiff's application for disability insurance benefits and supplemental security income benefits. Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

The following facts are not in dispute. On December 9, 1987, plaintiff filed an application for disability insurance benefits and supplemental security income benefits, alleging disability as of December 17, 1986. The application was denied initially and again on reconsideration. Plaintiff then requested a hearing, which was held on October 5, 1988, before an Administrative Law Judge ("ALJ"). In a decision dated February 18, 1989, the ALJ found that plaintiff was not disabled within the meaning of the Act. The ALJ's ruling became the final decision of the Secretary when, on August 3, 1989, the Appeals Council denied plaintiff's request for review.

Plaintiff now appeals to this Court seeking reversal of the Secretary's decision. After careful consideration, this Court finds that additional evidence is required with respect to plaintiff's current residual functional capacity, and therefore, remands the case to the Secretary for further proceedings consistent with this opinion.

## BACKGROUND

On the date that plaintiff filed for benefits, he was forty-one years old and had a history of heart complications. He has a high school education and has earned some college credits. Plaintiff has been employed in the past as a modified machinist in the aircraft industry, an auto mechanic, and a field technician. He was last employed as a sheet metal mechanic for an air conditioning company, where he apprenticed for six months before injuring his back in December of 1986.

Plaintiff sustained an injury to his lower back while at work on December 17, 1986. He initially was seen at the emergency room of Brookhaven Memorial Hospital for pain in his left ribs. X-rays of plaintiff's ribs and chest taken at that time were negative, and plaintiff was instructed to rest and avoid heavy lifting for four days. He was advised to see an orthopedist if his condition did not improve within the four day period.

Dr. Edward Yambo, plaintiff's family physician, treated plaintiff from January 12, 1987 to June 4, 1987. X-rays taken of plaintiff's lumbosacral spine proved negative. Dr. Yambo's examination disclosed a bulging disc at L4–L5 without evidence of herniation or spinal stenosis.

Dr. Yambo referred plaintiff to Dr. Dwight C. Blum, an orthopedic surgeon, in early April of 1987. Dr. Blum reported that plaintiff exhibited tenderness over the sacroiliac joints and paraspinals, as well as decreased range of motion. No neurologic deficits were discovered, however, and Dr. Blum's x-rays of plaintiff's lumbosacral spine disclosed no bony abnormalities, fractures, or dislocations. Dr. Blum diagnosed plaintiff's condition as an "acute lumbosacral sprain contusion." Dr. Blum prescribed Clinoril, and advised plaintiff to begin a physical therapy regimen.

Plaintiff subsequently underwent computerized tomographic evaluation ("CT-scan") of his lumbar spine. The CT-scan revealed a bulging disc at L4–L5, but yielded no evidence of herniation or of spinal canal stenosis. No further medication or treatment was prescribed at that time. Plaintiff pursued a course of physical therapy through the summer of 1987, then ceased to participate in the program, claiming that the activity exacerbated his condition.

In February of 1988, at the request of the Secretary, plaintiff was seen by Dr. M. Amini, a consulting surgeon. Plaintiff

complained of lower back pain and an inability to sit, stand, or walk for long periods of time. Dr. Amini's physical examination of plaintiff's neck and upper extremities proved negative. His report indicated that plaintiff walked with a normal gait, had slight difficulty sitting up from a prone position, and was able to stand and walk on his toes and heels with some discomfort. The report further noted that flexion and extension of the knees, as well as range of motion of both hips, were within normal limits. Dr. Amini's final medical impression was a lumbosacral spine strain with a history of bulging lumbosacral disc.

An early residual functional capacity assessment, completed in February of 1988, specified that plaintiff was capable of lifting or carrying a maximum of twenty pounds; unlimited pushing or pulling; frequently lifting or carrying ten pounds; standing or walking a total of about six hours in an eight hour day; and sitting approximately six hours in an eight hour day. The assessment indicated, further, that plaintiff could frequently climb, balance, stoop, kneel, crouch, and crawl, and that his capacity to reach and handle was unlimited.

Plaintiff began treatment with Dr. Victor Gold in February of 1988, in response to plaintiff's complaints of pain in his lower spine. Upon examination, Dr. Gold determined that plaintiff had markedly decreased range of motion in flexion, extension, and bending of the lumbosacral spine. Plaintiff's reflexes and motor and sensory responses, however, were deemed normal, and leg raising was negative. Dr. Gold concluded that plaintiff demonstrated disc bulging at L4–L5 and, in view of plaintiff's continued symptomology and persistent complaints of pain, recommended that plaintiff undergo a magnetic resonance imaging ("MRI") of his lumbosacral spine, and that he be fitted for a corset. An MRI of plaintiff's spine, performed in June of 1988, revealed a left-sided asymmetric bulge at L4–L5.

On July 6, 1988, Dr. Gold submitted a medical progress report to the New York State Workers' Compensation Board based on his examination of plaintiff that same day. The report indicated that plaintiff's pain continued and that straight leg raising was positive. Dr. Gold requested authorization for a lumbosacral brace, and suggested that plaintiff begin a back exercise program. Dr. Gold indicated on the Workers' Compensation form that plaintiff was totally disabled. Plaintiff was placed on Flexoril and was advised to consult a neurologist.

In early December, 1988, at the request of the Secretary, plaintiff was examined by Dr. Harold Massoff, an orthopedic surgeon. At this time, plaintiff complained of pain in his mid-lower back which radiated into his upper back. He also reported the development of a numbness in his foot and heel when driving a car for longer than thirty minutes, or when walking in excess of ten or fifteen minutes. Additionally, plaintiff stated that he was unable to lift more than fifteen pounds without experiencing pain. Dr. Massoff's physical examination of plaintiff revealed that plaintiff was capable of fully extending his knees, and could alternate without difficulty from the sitting position to the supine and from the supine to the prone position. Dr. Massoff reported that plaintiff was able to walk on his toes and heels with discomfort, and to squat. X-rays taken by Dr. Massoff of plaintiff's spine, pelvis, and hips were negative.

Dr. Massoff testified that although some of plaintiff's complaints were consistent with a diagnosis of nerve impingement, others were inconsistent with such a diagnosis, and that there were no objective findings from an orthopedic standpoint. Dr. Massoff further testified that both an MRI and a CT-scan are tests likely to reveal the existence, if any, of pressure on a nerve root.

In a medical assessment report of the plaintiff's ability to do work-related activities, Dr. Massoff stated that plaintiff's ability to lift, carry, stand, sit, and walk was unaffected by his bulging disc. The report indicated that plaintiff occasionally was able to climb, kneel, and crawl; that he frequently could balance and crouch; and

that his ability to reach, handle, push, and pull was unaffected. Dr. Massoff noted, however, that plaintiff suffered from a cardiac condition which Dr. Massoff recommended be assessed by a cardiologist.

Dr. Massoff opined that the slight asymmetrical bulge revealed by the MRI was not a significant discogenic pathology in view of the absence of clinical or radiological evidence of spinal stenosis or nerve root impingement. He explained that a bulging disc is one which extends slightly beyond its normal confines, but which does not impinge upon a nerve. Overall, Dr. Massoff concluded that plaintiff's complaints of mid to low back muscle pain were "subjective." Based on his medical findings, Dr. Massoff placed no physical restrictions on plaintiff's ability to do work-related activities.

In contrast, plaintiff testified that he is able to sit for approximately five to ten minutes at a time before experiencing pain in his back and legs. He stated that he is able to walk "partially around a supermarket" before feeling pain, can drive locally, can stand without pain for five to ten minutes, and can, at present, lift from three to five pounds. Plaintiff's daily activities include helping his wife care for their children, and giving automotive advice to friends. Plaintiff currently takes Soma to relieve pain.

Although plaintiff contends that his past heart condition is one of the disabilities supporting his current claim for benefits, no documentation to this effect has been provided, and plaintiff concedes that his back difficulties, and not his heart impairment, are what prevent him from returning to work as a sheet metal worker. The ALJ determined if plaintiff retains the residual functional capacity to do light or sedentary work, he is not disabled within the meaning of Title II of the Act.

## DISCUSSION

As indicated, the Secretary determined that plaintiff was not disabled for purposes of the Act. The primary issue to be resolved on review by this Court is whether the record, as a whole, reveals substantial evidence in support of that decision, and the scope of the Court's review of factual findings is limited to this inquiry. 42 U.S.C. §§ 405(g), 1383(c)(3). Absent legal error, the Secretary's decision, if supported by substantial evidence, is conclusive. 42 U.S.C. § 405(g); *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir.1983) (citation omitted).

The Supreme Court has defined "substantial evidence," in the context of a Social Security case, as being " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)). In determining whether substantial evidence exists, a district court should look to the entire record, including both contradictory evidence, as well as evidence from which conflicting inferences can be drawn. *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983). Simply stated, the evidence is to be viewed "in light of other evidence that detracts from it." *New York ex rel. Bodnar v. Secretary of Health & Human Services*, 903 F.2d 122 (2d Cir.1990) (citations omitted).

■ This Court notes, as well, that the " 'treating physician rule' governs the consideration afforded the medical opinion of a claimant's treating physician relative to other medical evidence presented at a disability proceeding." *Murdaugh v. Secretary of Health & Human Services*, 837 F.2d 99, 101 (2d Cir.1988). The rule provides that a treating physician's opinion as to disability is generally given greater weight than that of a non-examining or consulting physician. *Id.* More specifically, the "treating physician's opinion on the subject of medical disability, [including the] nature and degree of impairment, is: (i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians...." *Schisler v. Heckler*, 787

F.2d 76, 81 (2d Cir.1986). The Second Circuit has recognized, however, that the treating physician's rule is not intended to denigrate the role of the trier of fact; where genuine disparities exist between, or substantial evidence conflicts with, the opinions of treating physicians, the trier of fact is responsible for resolution of such inconsistencies. *Id.* (citations omitted).

In the present case, plaintiff was treated by at least three physicians: Dr. Edward Yambo, the family practitioner, who treated plaintiff for approximately 5 months; Dr. Blum, an orthopedic surgeon, who cared for plaintiff for approximately one year; and Dr. Gold, who treated plaintiff for approximately one year. The Court determines that Drs. Blum and Gold are entitled to treating physician status.

As previously stated, Dr. Gold specified on a Workers' Compensation report that plaintiff is totally disabled. In this context, however, "total" disability indicates only the inability to perform past relevant work, which, as the ALJ noted, and plaintiff concedes, is inadequate for purposes of the Act. In addition, Dr. Gold's opinion of disability was rendered merely by his marking an appropriate box on the Workers' Compensation form. Absent further explanation for this conclusion than what is presently provided on the form, Dr. Gold's cursory indication of total disability is insufficient to allow this Court to properly rule on plaintiff's entitlement, if any, to benefits under the Act.

The ALJ concedes that plaintiff is incapable of performing past relevant work requiring lifting and carrying in excess of twenty pounds. 20 C.F.R. 404.1520(e), 416.920(e). After a claimant has demonstrated the inability to perform past relevant work, the burden shifts to the Secretary to establish that alternative substantial gainful activity exists in the national economy that claimant can perform. 20

C.F.R. 404.1520, 416.920. *See also Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

The ALJ determined that, despite plaintiff's testimony regarding pain, the "minimal clinical and diagnostic findings" demonstrate that "the claimant retains sufficient spinal mobility and upper and lower body strength to perform sedentary work and light work...."[1] In reaching the conclusion that plaintiff is capable of performing light and sedentary work, the ALJ explained that "the claimant's complaints of pain and numbness are not substantiated by the multiple examinations performed by treating and examining physicians."

It is significant, with regard to the evidence presented by plaintiff, that in 1990 Congress enacted § 3(a)(1) of the Reform Act. 42 U.S.C. § 423(d)(5)(A) (1990) ("§ 423(d)(5)(A)"). Under that section, subjective complaints of pain alone are not "conclusive evidence of disability." Instead, for an individual to be considered disabled, complaints of pain must be accompanied by "medical signs and findings, established by medically accepted clinical or laboratory diagnostic techniques, which show the existence of a medical impairment...." § 423(d)(5)(A); *accord Stieberger v. Sullivan,* 738 F.Supp. 716 (S.D.N.Y.1990). *But see Bluvband v. Heckler,* 730 F.2d 886, 893 (2d Cir.1984) (citations omitted) (called into doubt by § 423(d)(5)(A)).

The present case clearly involves a medically documented impairment. As noted, objective tests confirm the existence of a bulging disc. Drs. Blum and Gold, both of whom enjoy treating physician status, concluded that plaintiff exhibits decreased range of motion in the lumbosacral spine, and restricted straight leg raising. Dr. Blum noted, in addition, that plaintiff experienced tenderness of the sacroiliac joints and paraspinals, and mild bilateral spasm in his spine.

---

1. The Court notes that "sedentary" work entails lifting a maximum of ten pounds at a time, occasionally lifting or carrying light articles, sitting, and often some degree of standing or walking. 20 C.F.R. 404.1567(a), 416.967(a). "Light" work involves lifting a maximum of twenty pounds at a time, frequent lifting or carrying of up to ten pounds, and either a significant amount of walking or standing, or predominantly sitting plus some pushing and pulling. 20 C.F.R. 404.1567(b), 416.967(b).

462

Dr. Massoff testified that a bulging disc is not a significant finding, and that some of plaintiff's complaints were "unphysiologic." However, as Dr. Massoff examined plaintiff on only one occasion, the force of his opinion is diminished because a "treating physician's determination is generally 'entitled to more weight than that of a doctor who has only seen the claimant once....'" *Bluvband*, at 730 F.2d at 893 (quoting *Rosa v. Weinberger*, 381 F.Supp. 377, 380 (E.D.N.Y.1974)). For this same reason, Dr. Massoff's opinion regarding plaintiff's current residual functional capacity is of questionable significance.

 The present record does not evince substantial contradictory evidence to overcome Dr. Gold's determination of plaintiff's disability. There is no disparity among the opinions of the physicians that plaintiff suffers from a bulging disc, and only Dr. Massoff, a consulting physician, has asserted that this condition is an insignificant pathology. Viewed in light of the evidence produced by the treating physicians, and given plaintiff's continued complaints of pain, Dr. Massoff's opinion is of minimal significance. Since, however, Dr. Gold's cursory conclusion of total disability was rendered in the context of a Workers' Compensation report, and given the further obstacle that neither treating physician has submitted evidence with regard to plaintiff's current residual functional capacity, the record supports the conclusion only that plaintiff is unable to perform his past relevant work, which, as indicated, is insufficient under the present Act. A question remains as to whether plaintiff retains the residual functional capacity to perform sedentary or light work as defined by the Act.

### CONCLUSION

For the above reasons, the Court concludes that in the present record, the treating physician's opinion is not contradicted by substantial evidence, but that further information is required regarding plaintiff's current residual functional capacity before a proper determination of plaintiff's entitlement to benefits may be made. Therefore, this Court remands the case to the Secretary for further proceedings consistent with the resolution of this issue.

SO ORDERED.