**Benedetto MINICHINO, Plaintiff,**

v.

**John J. CALLAHAN, Acting Commissioner of Social Security,[1] Defendant.**

No. Civ. 3:96–2189(DJS).

United States District Court, D. Connecticut.

Dec. 12, 1997.

---

1. President Clinton appointed John J. Callahan to serve as Acting Commissioner of Social Security, effective March 1, 1997, to succeed Shirley S. Chater, the originally named defendant in this action. Pursuant to FED. R. CIV P. 25(d)(1), John J. Callahan is automatically substituted as the defendant in this action. *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Secretary or any vacancy in such office.").

John R. Scanlon, Virshup, Caplan, Hecht & Scanlon, New Haven, CT, for Benedetto Minichino, Plaintiff.

Deirdre Anne Martini, U.S. Attorney's Office, Bridgeport, CT, for Shirley S. Chater, Social Security Administration, Defendant.

### ORDER

SQUATRITO, District Judge.

Upon review and absent objection, the magistrate's ruling [Document No. 10] is **AFFIRMED, APPROVED, and ADOPTED** as the ruling of this court. 28 U.S.C. § 636(b)(1)(A); Rule 2 of the Local Rules for United States Magistrate Judges (D.Conn.).

2. In addition to an alleged permanent disability of the lumbar spine following his two back surgeries, the plaintiff also suffers from diabetes, glaucoma, a seizure disorder, sixth cranial nerve palsy and cervical disk pain. The ALJ found none of these additional impairments to cause Mr. Minichino to qualify for DIB, and the parties

The clerk is **DIRECTED** to **CLOSE** this case.

**SO ORDERED.**

### MAGISTRATE JUDGE'S OPINION

SMITH, United States Magistrate Judge.

The plaintiff brings this appeal under 42 U.S.C. § 405(g) seeking review of a final decision by the Commissioner of Social Security (the "Commissioner") denying his application for disability benefits. The issue on appeal is whether there is substantial evidence in the record to support the Commissioner's decision that the plaintiff was not disabled within the meaning of the Social Security Act. For the reasons stated below, the plaintiff's motion for an order reversing the decision of the Commissioner, or in the alternative, remanding for a new hearing should be denied; the Commissioner's cross-motion for an order affirming his decision should be granted.

### I. ADMINISTRATIVE PROCEEDINGS

On June 3, 1994, the plaintiff applied for Social Security Disability Insurance Benefits ("DIB"), alleging an inability to work, beginning August 19, 1993, due primarily to back pain following two surgeries.[2] His application was denied on October 6, 1994. After the plaintiff's request for reconsideration was denied, he filed a request for a hearing before an Administrative Law Judge ("ALJ"). On June 21, 1995, a hearing was held before ALJ Lillian A. McEwen, who ultimately rendered a decision on September 1, 1995, finding that the plaintiff was not disabled. The Appeals Council declined the plaintiff's request for review on October 11, 1996, rendering the ALJ's decision the final decision of the Social Security Administration, subject to judicial review.

do not appear to dispute this finding. Therefore, the court will not further address these impairments beyond stating that there appears significant evidence in the record to support the ALJ's conclusions with regard to these additional impairments.

## II.  STATEMENT OF FACTS

The plaintiff, Benedetto Minichino, was born on June 23, 1939, and was fifty-five years of age on the date of his hearing before the ALJ. He attended school through the eleventh grade, obtained a G.E.D. while in the Navy, and has worked as a truck driver and a university campus police dispatcher. He reports that his disability forced him to stop working as a campus police dispatcher on August 19, 1993, and he has not engaged in substantial gainful activity at any time since that date.

On September 27, 1987, Mr. Minichino sustained a work-related lumbar disc injury while lifting the over-head door of a tractor-trailer truck. On January 6, 1988, he underwent a discectomy and laminectomy at L5–S1. Though he eventually returned to work, he continued to complain of pain, and a CT scan revealed a re-herniation of the L5 with significant stenosis. As a result, Mr. Minichino underwent disk fusion of the lumber spine on September 20, 1993. A chronological summary of Mr. Minichino's post-operative treatment by his orthopedic surgeon, Dr. Jeffrey M. Sumner, follows.

October 5, 1993: Mr. Minichino was neurologically intact and the fusion mass appeared to be in good position. There was minimal tenderness, and Mr. Minichino began therapy.

October 26, 1993: Mr. Minichino was neurologically intact, though there was still some tenderness in the lower back. Straight leg raising continued to improve.

November 16, 1993: Mr. Minichino was neurologically intact, and his straight leg raising was negative. The fusion mass continued in good position, and appeared to be maturing. Mr. Minichino was having some minor persistent back pain, and leg pain was a minimal complaint. He was able to walk up to a half-mile each day.

December 28, 1993: Mr. Minichino was neurologically intact and his straight leg raising was negative. There was some generalized mild tenderness but no swelling. He complained of back pain, though most of the leg pain was gone.

February 1, 1994: Mr. Minichino was neurologically intact, the fusion mass was maturing nicely, and there was remodeling of the graft. Back pain was still somewhat of a problem when sitting, though leg pain was not. Dr. Sumner began weaning Mr. Minichino off the prescribed corset.

February 22, 1994: Mr. Minichino was neurologically intact with no straight leg sign and X-rays showed the fusion to be maturing. There was still some tenderness in the back, and Mr. Minichino was having trouble weaning out of the corset.

March 22, 1994: Mr. Minichino's leg pain was almost gone, though he still had some stiffness and limitation of motion of the back, with flexion tolerated to only about thirty degrees. He was weaned from the corset almost completely and returned to therapy.

April 12, 1994: Mr. Minichino's progress continued, with X-rays showing the fusion to be consolidating nicely, and flexion increased to 50 degrees. Mr. Minichino reported some ache in the back, but no leg pain.

May 24, 1994: X-rays demonstrated a good, solid fusion. Mr. Minichino was neurologically intact and straight leg raising was uncomfortable at 80 degrees. He stated that leg pain was "pretty much gone," though back pain was still a problem. He complained about spasm and some aching pain radiating up to the base of the neck. Dr. Sumner switched Mr. Minichino to aquatic therapy, as he was not responding to corset weaning and dry land therapy.

June 28, 1994: Mr. Minichino was improving with physical therapy. The fusion looked well healed on X-ray and flexion was tolerable to almost sixty degrees.

August 9, 1994: Mr. Minichino was neurologically intact and flexion was limited to about sixty to seventy degrees. He found pool therapy to be quite helpful, and reported that he was more comfortable.

October 13, 1994: Mr. Minichino had reached a stable state. A CT scan showed that Mr. Minichino was fully fused, with no sign of any significant disc problems. There was some scarring and some small uptake in the lateral recess, but Dr. Sumner didn't see this as an operable condition as it was coupled with negative straight leg raising. Dr. Sumner began weaning Mr. Minichino off all narcotic medication.

After Mr. Minichino applied for DIB, Dr. Sumner evaluated his condition and reported those results in a letter dated November 8, 1994, to Mr. Minichino's attorney. Dr. Sumner stated that Mr. Minichino had a permanent disability of forty percent of the lumbar spine, based upon the lack of motion and persistent nerve pain associated with the scarring caused by the fusion. He stated that though Mr. Minichino had an intact fusion, he was left with significant limitations, including forty degrees of flexion and a very short sitting and standing time. Dr. Sumner went on to opine that Mr. Minichino's physical limitations prevented him from bending, stooping, squatting or standing for any significant time. Dr. Sumner concluded that Mr. Minichino's limitations would make him essentially unable to perform his past work as a truck driver or any significant full time job of any consequence, thus considering him disabled as defined under the Social Security Act.

Subsequent treatment notes from Dr. Sumner indicate the following.

November 15, 1994: Mr. Minichino was still experiencing problems with stiffness in his neck but there were no radicular symptoms, nor was there any neurologic deficit in the upper extremities. X-rays showed some degenerative changes in the spine, but Dr. Sumner saw no reason to perform an MRI at that time.

January 17, 1995: Mr. Minichino reported increasing neck pain and radiating pain down the left arm, with decreased sensation in the thumb and index finder of the left hand, slightly decreased strength, and significant pain in the left trapezius with pain radiating down into the shoulder. Dr. Sumner planned to perform an MRI on Mr. Minichino's cervical spine.

February 7, 1995: The MRI showed only minor degenerative changes and minimal foramina stenosis.[3] After an exam of Mr. Minichino which revealed a slight decrease in sensation in the hand, good strength and no reflex changes, Dr. Sumner recommended no further diagnostic or therapeutic interventions beyond physical therapy at home.

July 5, 1995: Mr. Minichino was neurologically unchanged and X-rays showed the fusion to be intact. He reported some persistent burning in the scar and a slight increase in leg pain. However, Dr. Sumner saw no reason to perform a CT scan, and scheduled follow up pending additional symptoms.

Just prior to Mr. Minichino's ALJ hearing, Dr. Sumner noted in a letter to Mr. Minichino's attorney dated March 27, 1995, that his patient had a solid fusion after his surgery, but experienced significant leg and back pain which limited his functionality. Dr. Sumner concluded that Mr. Minichino did not meet the minimum requirements for sedentary work, i.e., he could not lift repeatedly ten pounds, sit for more than thirty to forty minutes at a time, nor could he sit for six out of an eight hour day or stand for two hours at a time.

---

3. The ALJ noted in her opinion that there was no medical record that an MRI was administered. *Transcript of Proceedings Relating to the Applica-* *tion of Benedetto Minichino* (hereinafter *"Tr."*) at 29.

Mr. Minichino was also examined by the Social Security Administration's consulting physician, Dr. Joseph Ayoub, on September 22, 1994. Dr. Ayoub concluded:

> This gentleman has had an injury to the lumbosacral spine with herniation of the disc requiring laminectomy and later on fusion. He continues to have pain with radiculopathy to the left. There is evidence of decreased range of motion in the lumbar spine, as well as in the hips. There is also evidence of decreased motor power in the left lower extremity. He has pain in the neck, probably due to arthritic changes. There is evidence of marked decreased range of motion in the cervical spine.... I feel that this gentleman should have restrictions in standing, walking, climbing, balancing, bending, stooping, carrying and lifting, as well as in seeing. He should also avoid heights, as well as handling machinery.

*Tr.* at 173–74.

At his ALJ hearing, Mr. Minichino testified that he experiences constant back, left leg, and neck pain which prevents him from working. He takes Tylenol with codeine at night and Advil during the day for pain relief. He takes only short walks in town due to leg pain, and he can stand in one place for only thirty to forty minutes. He cannot bend or squat, and can sit for only thirty to thirty-five minutes before he has to get up and walk about. He can lift only about five to ten pounds, and sometimes experiences tingling in his hands, making it difficult to grasp objects.

His daily activities include rising at approximately 6:30 a.m., preparing coffee, eating his meals, watching TV while laying on the floor to minimize the pain, taking short walks on his street or at the park in town, and going to bed at approximately 10:00 p.m., though he does not sleep well due to pain. He is unable to perform chores around the house due to pain.

The ALJ concluded that Mr. Minichino's statements concerning his impairments and their impact on his ability to work were not entirely credible in light of their inconsistency, the claimant's own description of his limited activities and life style, the reports of the treating and consultative physicians, the nature of the medical record since the alleged onset date,[4] and the findings made by the ALJ on examination. Despite Mr. Minichino's acknowledged limitations,[5] the ALJ found that he retained the residual functional capacity to perform a wide range of sedentary work.[6] Furthermore, the ALJ determined that Mr. Minichino's limitations did not prevent him from performing his past relevant work as a campus police dispatcher which was, by his own description of the job, sedentary in nature. Based on these findings, the ALJ concluded that Mr. Minichino was not under a disability as defined by the Social Security Act, and he was not, therefore, entitled to DIB.

## III. SCOPE OF REVIEW

In reviewing a decision of the Commissioner under § 405(g), the district court performs an appellate function. *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir.1981); *Igonia v. Califano*, 568 F.2d 1383, 1387 (D.C.Cir.1977). The court may not make a *de novo* determination as to whether a claimant is disabled, *Wagner v. Secretary of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir.1990), but rather must ascertain whether the Commis-

---

**4.** The ALJ found the medical record did not contain significant clinical signs, findings, and tests consistent with the degree of functional limitations and pain alleged by Mr. Minichino.

**5.** The ALJ acknowledged that Mr. Minichino had the following limitations: "He should avoid work requiring prolonged standing, walking, climbing, balancing, bending, stooping, carrying and lifting, as well as handling machinery and working at heights." *Tr.* at 34.

**6.** The regulations define sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

sioner's findings are supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987). The Second Circuit has defined substantial evidence as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Williams ex rel. Williams v. Bowen*, 859 F.2d 255 (2d Cir.1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

Substantial evidence must be "more than a scintilla or a touch of proof here and there in the record." *Id.* Absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982).[7] Further, the Commissioner's decision will be sustained, if supported by substantial evidence, even where substantial evidence may support the plaintiff's position. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982), *cert. denied*, 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983); *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir.1980). "Where there is substantial evidence to support either proposition, the determination is to be made by the factfinder." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir.1990).

## IV. DISCUSSION

Under the Social Security Act, a person may obtain benefits upon a showing of disability. The disabling condition must be severe enough to keep the individual from working not only at his or her usual job, but also in any other substantial gainful work. The Act defines disability as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to

last for a continuous period of not less than 12 months.

*See* 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

Further, the Act provides that

> a[n] individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ....

42 U.S.C. § 423(d)(2)(A). The physical or mental impairment must be "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). It is the claimant's burden to prove that he or she is under disability by furnishing "such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." 42 U.S.C. § 423(d)(5)(A).

■ The regulations establish a five-step sequence for evaluating disability claims. 20 C.F.R. § 404.1520. Under that scheme, the claimant must prove that he or she: (1) is a non-working claimant; (2) who has an impairment which is a "severe impairment"; (3) but not a "listed impairment"; and (4) is no longer capable of performing his or her past relevant employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982). It then becomes incumbent upon the Commissioner to, (5) come forward with evidence that "the claimant still retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986). If the Commissioner fails

---

**7.** In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Thus, while § 405(g) provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive," it also provides that "[t]he court shall have the power to enter ... a judgment ...

reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing," if any of the Commissioner's findings are not supported by substantial evidence. The court may also set aside any determination which is based upon an error in failing to apply the correct legal standard. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984); *Aubeuf v. Schweiker*, 649 F.2d 107, 112 (2d Cir.1981).

to come forward with such evidence, then the claimant is entitled to disability benefits. *Alston v. Sullivan,* 904 F.2d 122, 126 (2d Cir. 1990); *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982).

The ALJ found that Mr. Minichino met the first, second, and third requirements listed above.[8] However, the ALJ concluded that the fourth requirement was not met, as Mr. Minichino was found to be capable of performing his past relevant employment as a campus police dispatcher. It is the ALJ's determination of this fourth requirement that Mr. Minichino contests on appeal.

Mr. Minichino contends that the ALJ made several crucial errors in denying his DIB claim. Specifically, Mr. Minichino claims the ALJ: (1) failed to give controlling weight to the treating physician's opinions; (2) substituted her own non-medical opinions in place of those of the treating physician; (3) failed to analyze the treating physician's reports pursuant to the requirements of 20 C.F.R. § 404.1527(d)(2) through (d)(5); (4) failed to specify what weight, if any, she gave to the treating physician's reports in coming to her decision denying Mr. Minichino's claim and yet relied upon the reports of said physician for support of her decision of denial; (5) failed to analyze Mr. Minichino's testimony pursuant to the requirements of 20 C.F.R. § 404.1529; and (6) failed to specify what weight, if any, she gave Mr. Minichino's testimony.

■ With respect to Mr. Minichino's claims regarding the ALJ's treatment of the treating physician's reports, the Second Circuit has recognized that the opinion of a treating physician on the diagnosis of medical disability is "(1) binding on the fact-finder unless contradicted by substantial evidence and (2) entitled to some extra weight." *Schisler v. Heckler,* 787 F.2d 76, 81 (2d Cir. 1986); *see also* 20 C.F.R. §§ 404.1527(d)(2)(i), 46.927(d)(2)(ii). As a corollary to this, the Commissioner may rely on the opinions of treating sources and their descriptions of functional capacity and findings that a plaintiff is not disabled for any and all work activity. *See Alston v. Sullivan,* 904 F.2d 122, 127 (2d Cir.1990); *Bennett v. Secretary of Health & Human Servs.,* 769 F.Supp. 457, 461 (E.D.N.Y.1991).

■ In reviewing the ALJ's decision, it appears evident that she considered all of the reports submitted by Dr. Sumner[9] as well as his conclusions regarding the physical limitations imposed by Mr. Minichino's impairments. As she stated in her decision, she was aware of the regulations providing that the opinion of a treating physician on the nature and severity of the claimant's impair-

---

8. Specifically, the ALJ found that Mr. Minichino had not engaged in substantial gainful activity since August 19, 1993. *Tr.* at 28. With regard to his impairments, the ALJ stated:

> In summary, the evidence supports a finding that Mr. Minichino has diabetes mellitus, a history of two surgical procedures involving discectomy, laminectomy and fusion of the lumbar spine, impairments which cause significant vocationally relevant limitations. However, as indicated in the medical evidence . . . , the severity of these impairments does not meet or equal the criteria of Listing 1.00 or 9.00, 20 C.F.R. Part 404, Subpart P, Appendix 1, which covers the musculoskeletal and endocrine systems.
>
> It is further found that the claimant has no impairment, the severity of which meets the criteria of any of the listed impairments described in Appendix 1 of the Regulations (20 C.F.R. Part 404, Subpart P, Appendix 1). Furthermore, no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, and it is concluded that the claimant's impairments,

> individually or in combination, do not equal in medical severity the criteria of any listed impairment.
>
> The claimant also has non-severe impairments including a controlled seizure disorder, glaucoma under treatment, and mild degenerative changes in the cervical spine.
>
> *Tr.* at 30.

9. The court notes that Dr. Sumner submitted an additional letter outlining Mr. Minichino's condition to the Appeals Council dated November 10, 1995. *See Perez v. Chater,* 77 F.3d 41, 45 (2d Cir.1996) (new evidence submitted for the first time to the Appeals Council, and not the ALJ, becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision). As the report merely reiterates Dr. Sumner's findings and conclusions contained in prior records which were considered by the ALJ, there is no need for remand to the Commissioner on the basis of this additional evidence. *See Perez,* 77 F.3d at 47 (remand not required where new evidence is consistent with prior treatment notes or reports).

ments is generally entitled to extra weight, and is controlling when it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence of the record. *See Tr.* at 32 (citing 20 C.F .R. § 404.1527(d)(2)). However, the ALJ found that Dr. Sumner's conclusion that Mr. Minichino was disabled was "contradictory and conclusory and [was] not supported by objective evidence including signs, findings, and tests, and therefore [was] not entitled to conclusory weight under 20 C.F.R. 404.1527." *Tr.* at 32.[10] Thus, it seems clear from the record that while the ALJ did not give controlling weight to the treating physician's opinions, she iterated a "good reason" for not doing so, and instead considered the physician's opinions as part of the evidence as a whole. 20 C.F.R. § 404.1527(d)(2); *see also* 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will

weigh all of the evidence and see whether we can decide whether you are disabled based on the evidence we have."). The court finds no error in these decisions by the ALJ.[11]

Regarding Mr. Minichino's assertion that the ALJ substituted her own non-medical opinions in place of the treating physician's opinions, the court notes that it is the treating physician's opinion on the subject of medical disability that is entitled to weight, not his opinion of whether the claimant meets the statutory requirements of the Social Security Act. 20 C.F.R. §§ 404.1527(d), (e). Rather than substituting her own non-medical opinions, the court is satisfied that the ALJ examined the evidence as a whole and found the medical evidence, combined with Mr. Minichino's testimony and other evidence regarding his daily activities, did not support a finding that the claimant was unable to perform any substantial gainful work. There is substantial evidence in the record to support this conclusion[12]

10. The ALJ noted that, despite Dr. Sumner's conclusion that Mr. Minichino was disabled, his reports failed to point to any medical evidence which substantiated the disabling functional limitations described by Dr. Sumner. *Tr.* at 32. Furthermore, his progress reports noted findings inconsistent with his ultimate conclusion regarding Mr. Minichino's disability. For example, after the September 20, 1993, surgery, Dr. Sumner noted that Mr. Minichino was neurologically intact, and continued to improve with lessening back pain. *Tr.* at 28. By March 1994, Mr. Minichino's leg pain was pretty much gone, and he was no longer wearing a back brace. *Id.* Dr. Sumner noted in October 1994 that there was no sign of any significant disc problems, and Mr. Minichino had reached a stable state and was to be weaned off all narcotic medication. *Id.* In November 1994, radicular symptoms were absent, and there was no neurologic deficit in the upper extremities. *Id.* In summary, the ALJ concluded that Dr. Sumner's opinion that Mr. Minichino would have a short sitting and standing time was "replete with inconsistencies, ... and not substantiated by objective signs, findings, and tests." *Tr.* at 29. The court finds substantial evidence in the record to support this conclusion. *See* note 12, *supra,* for additional inconsistencies in the record.

11. Mr. Minichino also contends that, in declining to give Dr. Sumner's opinion controlling weight, the ALJ failed to review the factors relevant to that determination outlined in 20 C.F.R. § 404.1527(d)(2) through (d)(5). On the contrary, the ALJ clearly outlined concerns she had with the supportability, *see* 20 C.F.R.

§ 404.1527(d)(3), and consistency, *see* 20 C.F.R. § 404.1527(d)(4), of the opinion. The court is satisfied that the ALJ reviewed the evidence according to the regulations, and iterated good reasons for giving Dr. Sumner's opinion the weight it received. *See Porter v. Chater,* 921 F.Supp. 89, 90 (D.Conn.1996) (reversing the ALJ's decision for failure to provide a statement of "good reasons" in his decision for whatever weight he might have given the treating physician's opinion).

12. In addition to the inconsistencies in the treating physician's own reports discussed in note 10, *infra,* the ALJ found additional evidence in the record discrediting Mr. Minichino's disability claim. For example, Dr. Ayoub, the Social Security Administration's consulting physician, "opined that the claimant 'should have restriction in standing, walking, climbing, balancing, bending, stooping, carrying, and lifting, as well as in seeing.'" *Tr.* at 29. Unlike Dr. Sumner, Dr. Ayoub did not list a restriction which would prevent Mr. Minichino from performing a sedentary job. Furthermore, Mr. Minichino's August 1994 activities report demonstrated that he walked, went to aqua therapy twice a week, read, folded laundry, did some shopping, and drove short distances. *Tr.* at 31. He also attended church and periodically visited a nursing home. *Id.* Finally, the ALJ noted that the medical record did not "contain significant clinical signs, findings, and tests consistent with the degree of functional limitations and pain alleged by Mr. Minichino" during his oral testimony before the ALJ. *Tr.* at 32.

Turning to the ALJ's treatment of Mr. Minichino's testimony, it appears that Mr. Minichino objects primarily to the ALJ's conclusion that "the claimant's statements concerning his impairments and their impact on his ability to work [were] not entirely credible." *Tr.* at 32.[13] Mr. Minichino argues that, other than the relationship between the medical evidence and the symptoms alleged, the ALJ failed to identify even one factor outlined in 20 C.F.R. § 404.1529[14] which would support her conclusion regarding the credibility of the claimant. On the contrary, the ALJ's decision specifically lists the factors outlined in 20 C.F.R. § 404.1529[15] and mentions several of these factors as they pertain to Mr. Minichino. *See Tr.* at 31–32 (discussing Mr. Minichino's varied daily activities); *Tr.* at 32 (noting Mr. Minichino's current pain medication of Tylenol with codeine at night and Advil during the day); *Tr.* at 32 (commenting that Mr. Minichino last saw his treating physician on February 7, 1995); *Tr.* at 31 (noting Mr. Minichino's statements that he lay on the floor eating breakfast with a hot pack on his neck, back and arm); *Tr.* at 28–30 (discussing conflicting doctor's findings regarding Mr. Minichino's sitting limitations). Thus, rather than rejecting Mr. Minichino's symptoms solely because she believed they were not substantiated by medical evidence, as claimed by Mr. Minichino, the court finds that the ALJ appropriately based her assessment of the claimant's abilities upon a review of the entire record

before her. *See Aponte v. Secretary of Health & Human Servs.,* 728 F.2d 588, 591–592 (2d Cir.1984) (ALJ is entitled to make an independent judgment regarding the degree of impairment caused by the claimant's condition); *McLaughlin v. Secretary of Health, Educ., Welfare,* 612 F.2d 701, 704 (2d Cir. 1980) (if Commissioner's findings are supported by substantial evidence, the court must uphold decision to discount a claimant's subjective complaints).

■ Finally, Mr. Minichino argues that the ALJ failed to specify what weight, if any, she gave to the claimant's testimony during her deliberations. This error, Mr. Minichino claims, is particularly important given the fact that the ALJ apparently relied upon the claimant's own description of the working conditions at his past relevant employment as a campus police dispatcher in order to determine he retained the residual functional capacity to perform this type of employment. Mr. Minichino argues that, if his statements are credible enough for the Commissioner to rely upon to support his position regarding past relevant employment, then they must be credible enough to rely upon to support the claimant's disability.[16] The court is not persuaded by this rationale. If there is contradictory evidence for some testimony, as there was here regarding the limitations imposed by Mr. Minichino's impairments, but not for other testimony, as was the case with Mr.

**13.** The court notes that the ALJ has discretion to evaluate the credibility of a claimant and to make an independent judgment, in light of medical and other evidence, regarding the true extent of the pain experienced by the claimant. *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979).

**14.** The Regulations list the following factors to be considered in evaluating the credibility of a claimant's subjective complaints:

> (1) the individual's daily activities; (2) the location, duration, frequency and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symp-

toms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

**15.** *Tr.* at 30–31.

**16.** Mr. Minichino offers *Porter v. Chater,* 921 F.Supp. 89 (D.Conn.1996), as support for this assertion. However, though the Social Security claimant in *Porter* suggested a similar line of reasoning—that the ALJ erroneously discredited part of the treating physician's opinion while relying on another part of his opinion to justify the denial of benefits—the court ultimately remanded the case due to the ALJ's failure to provide a statement of "good reasons" in his decision for whatever weight he might have given the treating physician's opinion, as required by 20 C.F.R. § 404.1527(d)(2). *Porter,* 921 F.Supp. at 90. Thus, Mr. Minichino's argument is not supported by this case.

Minichino's description of the job requirements of a campus police dispatcher,[17] the court is satisfied that there was substantial evidence in the record to support the ALJ's conclusions on both fronts.

In summary, the court finds that the record before the ALJ provided a reasonable medical basis and substantial evidentiary support for the ALJ's conclusion that Mr. Minichino's impairments do not prevent him from performing his past relevant work. The Commissioner's decision should, therefore, be affirmed.

## V. CONCLUSION

For the foregoing reasons, the plaintiff's motion for an order reversing the decision of the Commissioner, or in the alternative, remanding for a new hearing (document no. 7) should be **DENIED,** and the Commissioner's cross-motion for an order affirming his decision (document no. 6) should be **GRANTED.** Either party is free to seek review of this report and recommendation as provided in 28 U.S.C. § 636(b) (written objections to recommended ruling must be filed within ten days of service of same); FED. R. CIV. P. 6(a), 6(e), and 72; and Rule 2 of the Local Rules for United States Magistrate Judges. **Failure to object in a timely fashion may preclude further review.** *Small v. Secretary of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989).

---

**17.** In his Disability Report, *Tr.* at 115–122, Mr. Minichino described his position as a campus police dispatcher as requiring him to receive calls and dispatch officers, indicating that the job required no walking or standing, seven hours of sitting per day, only occasional bending or reaching, and no lifting or carrying. *Tr.* at 119–120. In his testimony before the ALJ, Mr. Minichino stated that except for an hour of lunch, he was required to stay at the desk. *Tr.* at 54. He admitted he was free to sit or stand at will, as long as he stayed at the desk. *Id.* The ALJ found this description consistent with the requirements of a sedentary job, for which Mr. Minichino retained the residual functional capacity to perform.