**Lillie SHIVER, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner, Social Security Administration, Defendant.**

No. 97 CV 2932.

United States District Court,
E.D. New York.

Oct. 2, 1998.

Martin R. Sobel, Brooklyn, NY, for Plaintiff.

Zachary W. Carter, U.S. Atty., Brooklyn, NY, (Michelle Perez, of counsel), for Defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Lillie Shiver brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the defendant Commissioner of Social Security that she is not entitled to disability insurance benefits and supplemental security income benefits under the Social Security Act.

### I

Plaintiff filed the application for disability insurance benefits and supplemental security income on January 4, 1990. After the Commissioner denied the application, plaintiff requested a hearing which was held on June 12, 1991. In a decision dated September 27, 1991, Administrative Law Judge, Robert Sugerman, determined that the plaintiff was not disabled within the meaning of the Social Security Act. On September 4, 1992, the Appeals Council remanded the case to Administrative Law Judge Sugerman for further pro-

ceedings. The Appeals Council said that the decision did not address properly the plaintiff's subjective symptoms and complaints.

Plaintiff's second hearing was held on October 20, 1993. On December 9, 1993 Administrative Law Judge Sugerman again found the plaintiff not disabled. On June 16, 1994 the Appeals Council remanded the case to a different Administrative Law Judge for further hearings. The Appeals Council said that Administrative Law Judge Sugerman had not adequately addressed certain of plaintiff's requests and complaints.

On June 22, 1995 plaintiff appeared for a hearing with an attorney before Administrative Law Judge Michael P. Friedman. On October 13, 1995, he found that the plaintiff was not disabled. The Appeals Council denied plaintiff's request for review on March 26, 1997, and this action followed.

## II

Plaintiff was born on January 12, 1950. She graduated from high school and attended two years of college. She worked for the New York City Transit Authority from 1974 through January 1989, as a token booth clerk through 1985, and as a cleaner from 1985 through 1989. As a token booth clerk, she had to sit and stand for prolonged periods. As a cleaner, she did constant walking, climbing, bending, pushing, pulling, heavy lifting, and prolonged standing.

Plaintiff fell while cleaning a bathroom in May 1985, injuring her left shoulder, lower back and knee. She was then placed on light duty as a cleaner sweeping the subway station and picking up garbage. Plaintiff states that in April 1988, she stopped working because of severe pain in her back and left knee. She resumed work in November 1988 on restricted duty status and was assigned to work on a refuse train emptying garbage cans into a dumpster. She stopped this work in January 1989 because the job was no longer considered a restricted duty job.

In her claim, plaintiff said that her disability began in January 13, 1989 due to an accident on the job. The Administrative Law Judge Friedman noted that plaintiff initially alleged an onset date of January 13, 1989, but later changed the onset date to April 18, 1988. Plaintiff attributes her disability to hypertension, diabetes, claustrophobia, and multiple physical impairments including osteoarthritis and multiple orthopedic injuries. Plaintiff has not engaged in substantial gainful activity since April 18, 1988.

During the hearing, plaintiff testified that she experienced pain in her left shoulder, lower back, knees, legs, and ankles, and numbness in her left arm and left hand. She said that treatment had included physical therapy, hospital treatments, periodic visits to her treating physician, Dr. Ernesto Lee, and the use of special wraps for the waist and heating pads.

Plaintiff testified that she is able to stand for up to ten minutes, walk about one block, and lift and carry light things. When asked by Administrative Law Judge Friedman how long she could sit, she responded, "I sit for as long as I have to." She travels by taxi, bus or subway, but the latter only if essential. Plaintiff shops for groceries but her children perform most of the household chores. Her leisure activities include reading and watching television. She testified that the television was on "all the time." She also socialized with others and attended church three times a week.

Administrative Law Judge Friedman made the following formal findings. The plaintiff met the disability insured status requirements on April 18, 1988, and continued to meet them through December 1993. He determined that while plaintiff's impairments were "severe," particularly those to the low-back and left upper extremity, her condition did not meet or equal the criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4. He also found that plaintiff's history of anemia, diabetes, and hypertension did not meet the criteria for "severe" impairments, as these conditions were well controlled medically.

The Administrative Law Judge determined that although plaintiff was precluded from returning to her past relevant work because of her musculoskeletal and orthopedic impairments, she remains able to engage in sedentary work, involving over a typical workday mostly sitting, very limited amounts

of standing and walking, and the carrying and occasional lifting of a maximum of up to ten pounds. Given the plaintiff's age, education and work history, he held that the plaintiff can engage in sedentary jobs existing in significant numbers in the national economy and is not disabled within the meaning of the Social Security Act and regulations.

## III

Plaintiff saw her treating physician, Dr. Ernesto Lee, an orthopedist, from February 1990 to March 1995 in connection with her application for workers' compensation benefits. The frequency of her visits ranged from monthly to once every three months. Usually the visits were for no more than 10 or 15 minutes.

All of Dr. Lee's reports except one were on the printed forms of the Workers' Compensation Board. On May 28, 1992, plaintiff's lawyer submitted to the Appeals Council a sheet of paper containing Dr. Lee's responses to a question asking how many hours plaintiff could sit, stand, and lie down. Dr. Lee filled in one-half hour for each activity except for the category "lie down." In that box, he filled in one hour. He also put in the space for additional comments that plaintiff has "pain on sitting, walking, and standing."

In his first filing with the Workers' Compensation Board, Dr. Lee filled in "L.S.S., sprain and contusion of left knee and left shoulder." In subsequent monthly or bimonthly reports dated March 15, 1990 to October 28, 1992, Dr. Lee filled in almost identical language as to the nature of plaintiff's injury. As for any change in plaintiff's condition, he filled in "patient is doing better as to lumbar spine" in five reports in 1990, and in five and six reports, respectively, in 1991 and 1992. Apparently, plaintiff was experiencing a continuous improvement in her lumbar spine condition. In 1992, the doctor also noted in three reports that the patient had less pain in the lumbar spine. Dr. Lee checked off the box for "total disability" in all of the forms from February 1990 to October 1992.

Thereafter, on all the forms dated December 16, 1992 to March 1, 1995, Dr. Lee filled in "permanent partial disability." As to the nature of the patient's injury, similar form language again appears in the forms. To describe any change in patient's condition, he noted either that the patient was "doing better as to lumbar spine" or is "doing about the same as to lumbar spine."

In all of the reports from 1990 to 1995, Dr. Lee filled in the box for treatment with "continue exercises, medication, and therapy." He did not note the nature of the exercises, medication, or therapy prescribed on any of the forms.

Nowhere in the printed reports is there a narrative statement by Dr. Lee of plaintiff's condition, his treatment of her, or any analysis of the impact of her injuries on her capacity to work. Plaintiff testified that Dr. Lee did not examine her but simply asked her questions. Thus evidently, his findings were based on what she said.

Plaintiff saw a Dr. Barbara Colon in April 1990 in connection with her workers' compensation claim. Dr. Colon reported mild defects in the motions of the left shoulder, mildly limited flexion of the right knee, and moderately restricted flexion of the left knee from a supine position. The doctor noted that plaintiff was obese but her gait was normal, and that trunk flexion was moderately restricted. The doctor determined that plaintiff had permanent partial disability for workers' compensation purposes.

Plaintiff was examined by Dr. Peter Graham of K.M.D. Management Services on May 1, 1990. Plaintiff's chief complaints were pain in the left knee and back, a history of diabetes, and hypertension. Dr. Graham noted no scoliosis, muscle spasm, or tenderness over the spine, and he found the lumbar lordosis to be normal. Plaintiff had a full range of motion in her cervical spine and in all of her joints except her left knee. An x-ray of plaintiff's lumbar spine and left knee taken on May 1, 1990 was negative. Dr. Graham found no signs of clubbing or edema of the extremities, and no asymmetry, atrophy, or neurological abnormality. A limited abdominal sonogram performed on April 19, 1990 was normal. Dr. Graham opined that the plaintiff's hypertension and diabetes were

under control, that there was some limitation of function of the left knee, and that there was no tenderness but some limitation of function of the spine.

Dr. Finger examined the plaintiff consultatively on August 20, 1990 for the Bureau of Disability Determination of the New York State Department of Social Services. Plaintiff was able to flex forward to 70 degrees before complaining of mild to moderate lower back pain. She had a normal range of motion in her cervical spine. She was able to flex the left knee to 120 degrees but the doctor noted some tenderness to palpation. Neurological examination revealed no sensory deficit or muscle atrophy. The doctor's impression was obesity, chronic lower back disorder, borderline non-insulin dependent diabetes mellitus, hypertension, and a history of vertigo and anemia.

Dr. Robert Zaretsky of Sports Medicine and Rehabilitation Therapy examined plaintiff on May 21, 1992 in connection with her claim for workers' compensation benefits. He reported muscle tautness in her cervical spine and moderate muscle tautness in the lumbar spine. Plaintiff was able to bend forward 50 degrees, extend ten degrees and laterally bend ten degrees. Straight leg raising was negative. The doctor reported no atrophy of the thighs and calves. He recommended that the plaintiff be retired with "ordinary disability" for purposes of workers' compensation.

Dr. Ernest Abeles examined plaintiff and reported his findings in a letter to the City of New York dated May 27, 1992. He reported that the plaintiff did not cooperate during the examination but concluded that he failed to find sufficient objective evidence to recommend an ordinary disability retirement.

Dr. Glenn Morris examined plaintiff consultatively on June 18, 1993 for the Office of Disability Determinations of the New York State Department of Social Services. He found that plaintiff's straight leg raising was 30 degrees on plaintiff's right and 20 degrees on her left. The neck had 80 percent of the full range of motion. She weighed 253 pounds and could laterally bend and rotate her spine 20 degrees. Spine flexion was painless. Plaintiff's joints showed no swelling or redness, and she had a full range of motion in her knees. X-rays of her lumbar spine and knee were normal. Although plaintiff expressed much pain that she claimed to be disabling, the doctor noted that there were no definite physical findings to document this.

In an assessment of ability to do work related activities, Dr. Morris noted that the plaintiff could lift up to ten pounds occasionally and could stand, walk, and sit for a total of three hours during an eight-hour day, one hour of which could be without interruption. The doctor stated in the report that the "medical findings that support this assessment" were the "plaintiff's complaints of pain." He assessed that she could do various postural activities (climbing, stooping, crouching, etc.) occasionally, and that such physical functions as reaching, handling, and feeling were not affected by impairment.

Dr. Harvey Grable examined plaintiff consultatively on July 1, 1993 for the Office of Disability Determinations of the New York State Department of Social Services. He reported that the plaintiff complained of pain in her lower back, right knee, left arm, and shoulder. He reported no spasm, tenderness, or limited motion in plaintiff's dorsal, cervical or lumbar spine, or sensory deficits to her upper or lower extremities. Straight leg raising was normal. The doctor concluded that plaintiff had no "significant musculoskeletal problems," and that she could stand for prolonged periods, walk prolonged distances and lift up to twenty pounds.

Dr. Lewis Wiener, a Diplomate of the American Board of Psychiatry and Neurology, examined plaintiff consultatively in January 1995. The physical examination revealed no muscle atrophy or contracture of her joints. The neurologic examination was normal. There was no evidence of organic mental deterioration, agitation or hallucination and no abnormalities of extraocular movement. Dr. Wiener also observed no abnormalities of station and gait. The power, tone, and coordination of her extremities were normal. The doctor concluded that he found no objective findings of neurologic disease and that the plaintiff was able to resume

her "full activities of daily living without restriction."

## IV

■ The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982). The court must also determine whether the claimant has had a "full hearing" as required by the regulations. *Cruz v. Sullivan,* 912 F.2d 8, 11 (2d Cir.1990).

■ For purposes of Disability Insurance and Supplemental Security Income benefits, an individual shall be considered disabled if she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). The physical or mental impairment must be so severe that the individual "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Administrative Law Judge concluded that the plaintiff has a "severe impairment," but that she has the residual functional capacity to meet the physical exertional requirements of sedentary work. In reaching this determination, the Administrative Law Judge found Dr. Lee's partial report of residual functional capacity to be of "little value," reasoning that this report was "not only unsupported by objective findings but completely at odds by [sic] statements from Dr. Lee in standard Worker's Compensation C–4 forms, [indicating that by 1992] the claimant was doing better particularly as to the lumbar spine and lumbosacral spine."

Moreover, Dr. Lee's statement that in an eight hour day, plaintiff could sit for only one-half hour and lie down for one hour was inconsistent with plaintiff's admission that she could sit as long as she had to. To meet Dr. Lee's findings, plaintiff would have had to have been not partially disabled but a hopeless basket case.

■ The determination of a treating physician is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). Dr. Lee did not cite any laboratory diagnostic techniques on any of the forms he filled in. In fact, he put on the workers' compensation reports in 1992 and 1993 requests for authorization of an MRI. Apparently, these requests were never granted. At any rate, no MRI results were submitted into the record.

■ Even if Dr. Lee's medical findings in the workers' compensation forms are taken at face value, his determination about plaintiff's disability does not establish her eligibility under the Social Security Act because two different statutory standards for disability apply. Under workers' compensation, disability indicates the "inability of an employee ... to perform the regular duties of his employment or the duties of any other employment which his employer may offer him at his regular wages." N.Y. Workers' Compensation Law § 201 (McKinney 1994). The Social Security Act, on the other hand, defines disability as the inability to engage in any "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). *Cf. Bennett v. Secretary of U.S. Department of Health and Human Services,* 769 F.Supp. 457, 461 (E.D.N.Y.1991); *see also Coria v. Heckler,* 750 F.2d 245, 247 (3d Cir.1984) (noting that in social security cases, when evaluating medical forms prepared in connection with a workers' compensation claim, it is important to distinguish between aspects of the physicians' reports that "represent the physician's medical findings" and those that represent "conclusions as to ... disability for purposes of workers' compensation"). Therefore, an opinion of disability rendered for purposes of workers' compensation is not binding under the Social Security Act. *See Rosado v. Shalala,* 868 F.Supp. 471, 473 (E.D.N.Y.1994) (Trager, D.J.).

198

It is true that the reports of Drs. Graham, Finger, Grable, Morris, and Wiener, on which the Administrative Law Judge relied, were each based on examining the plaintiff once. Of course, the determination of a treating physician is "generally 'entitled to more weight than that of a doctor who has only seen the claimant once.'" *Bennett v. Secretary of U.S. Department of Health and Human Services,* 769 F.Supp. 457, 462 (E.D.N.Y.1991) (quoting *Rosa v. Weinberger,* 381 F.Supp. 377, 380 (E.D.N.Y.1974)). But, while not entirely consistent as to the plaintiff's residual functional capacity, the opinions of the consultative physicians taken as a whole and together with plaintiff's admissions, constituted substantial evidence that plaintiff was not disabled. The Administrative Law Judge was justified in finding that Dr. Lee's reports, to the extent they were entitled to weight, were outweighed by the other substantial evidence in the record. He was not required to give controlling weight to Dr. Lee's reports.

Plaintiff had a full and fair hearing.

The decision is affirmed, and the complaint is dismissed.

So ordered.